WALLER, APPELLEE, v. MAYFIELD, ADMR.; E.F. HAUSERMAN COMPANY, APPELLANT.

[Cite as Waller v. Mayfield (1988), 37 Ohio St. 3d 118.]

(No. 87-456—Submitted January 20, 1988—Decided June 8, 1988.)

*Bruce D. Taubman,* for appellee.

*Calfee, Halter & Griswold* and *William L.S. Ross,* for appellant.

LOCHER, J. The issues presented in this action are (1) whether a court of appeals, when reviewing a directed verdict granted to the defendant at the conclusion of the plaintiff's case pursuant to Civ. R. 50(A), may enter final judgment in favor of the plaintiff upon reversal of the directed verdict; and (2) whether the trial court properly granted the appellant-employer's motion for a directed verdict. We hold in the negative on both issues and, accordingly, reverse the decision of the court of appeals and remand the cause for a new trial.

I

Appellant initially contends that the court of appeals erred in entering final judgment for appellee before appellant had an opportunity to present its evidence at trial. We agree. The cause *sub judice* was decided by the trial court on appellant's motion for directed verdict at the conclusion of appellee's case. Appellant had not yet had an opportunity to offer evidence to the jury when appellee brought his appeal to the appellate court. Appellee maintains that the decision of the court of appeals was in accord with App. R. 12(B) and this court's holding in *Houk* v. *Ross* (1973), 34 Ohio St. 2d 77, 63 O.O. 2d 119, 296 N.E. 2d 266.[1]

App. R. 12(B) provides in pertinent part:

"* * * When the court of appeals determines that the trial court commit-

---

[1] *Houk* is distinguishable. That case involved a Civ. R. 56 motion for summary judgment. This court held in paragraph one of the syllabus that: "An entry of summary judgment, pursuant to Civ. R. 56, against the moving party by a Court of Appeals does not prejudice the moving party's 'due process' rights *where all the evidence material to the issue being litigated is before the court,* and the record shows that no genuine issue as to any material fact exists and that the nonmoving party is entitled to judgment as a matter of law." (Emphasis added.) In the instant action, *"all of the evidence material to the issue being litigated"* was not before the court. Only the appellee's evidence was before the court. Moreover, Civ. R. 56 does not contain the language of Civ. R. 50 with regard to offering evidence following denial of the motion.

ted error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court *and render the judgment or final order that the trial court should have rendered,* or remand the cause to the court with instructions to render such judgment or final order." (Emphasis added.) "* * *[T]he phrase 'should have rendered' cannot be interpreted to extend authority to the Court of Appeals beyond that granted the trial court." *Houk, supra,* at 80, 63 O.O. 2d at 121, 296 N.E. 2d at 269.

Assuming the trial court had *denied* appellant's motion for a directed verdict at the close of appellee's evidence, it could not have rendered a proper judgment for appellee at that time. Civ. R. 50(A)(2)[2] provides:

"A party who moves for a directed verdict at the close of the evidence offered by an opponent *may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts.*" (Emphasis added.)

Pre-Civil Rules cases also recognized the right of the defendant to proceed with his case if his motion was denied. "But where only the defendant moves for a directed verdict, there is no waiver of a jury. Certainly the plaintiff does not waive a jury, and if the motion is overruled the defendant may go forward and submit his case to the jury. * * * Such a situation does not constitute a waiver of a jury or a trial to the court." *Bauer* v. *Cleveland Ry. Co.* (1943), 141 Ohio St. 197, 202, 25 O.O. 297, 300, 47 N.E. 2d 225, 228, citing as authority *Michigan-Ohio-Indiana Coal Assn.* v. *Nigh* (1936), 131 Ohio St. 405, 6 O.O. 111, 3 N.E. 2d 355.

The final judgment entered by the court of appeals, in effect, denied appellant's motion for a directed verdict and foreclosed appellant's right to offer evidence to the jury. Appellant had no opportunity to defend itself at trial. This is in direct contravention of Civ. R. 50(A)(2). The trial court could not have rendered such a judgment at that point in the trial. Accordingly, we hold that when a court of appeals is reviewing the propriety of a directed verdict granted to a defendant at the close of the plaintiff's case pursuant to Civ. R. 50(A), it may not enter final judgment in favor of the plaintiff upon reversal of the directed verdict. Therefore, it was error for the court of appeals to enter final judgment for appellee in the case at bar.

## II

The next issue to be addressed is whether the trial court properly granted the appellant's motion for a directed verdict.

Civ. R. 50(A)(4) provides the standard for a decision on a motion for directed verdict: "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that con-

---

[2] The Rules of Civil Procedure are applicable to proceedings brought under R.C. 4123.519. *Price* v. *Westinghouse Electric Corp.* (1982), 70 Ohio St. 2d 131, 24 O.O. 3d 237, 435 N.E. 2d 1114.

clusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

"* * *[I]t is uncontestably the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to permit reasonable minds to reach different conclusions on that issue. * * * [Citations omitted.] Conversely, it is also the duty of a trial court to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. In other words, if all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party. Naturally, if the finding on that one issue disposes of the whole case, a duty arises to grant judgment upon the whole case. [Citation omitted.]" (Emphasis *sic*.) *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 220, 58 O.O. 2d 424, 427, 280 N.E. 2d 896, 899-900.

The evidence before the trial court at the time appellant moved for a directed verdict showed that appellee fell while descending stairs at his place of employment in an effort to report to a work assignment on a lower floor. The crucial issue before the court in determining whether appellee's injury was compensable was whether appellee's injury did, in fact, "arise out of" his employment.

An injury sustained by an employee that is compensable under the Workers' Compensation Act "includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). It is undisputed that appellee sustained his injury while in the course of his employment.

Appellant contends that appellee's injury did not "arise out of" his employment because appellee did not demonstrate that his injury occurred as a result of some hazard or risk pertaining to his employment. Appellant places great reliance on the dissenting opinion in the court of appeals and infers that appellee's injury must have been sustained from an idiopathic[3] fall because there was no evidence of water, oil, or any other foreign substance on the stairs. Appellant's argument appears to require that appellee show fault on the part of his employer before he may be eligible for benefits.

As described in the recent case of *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 110, 522 N.E. 2d 489, 498-499:

"* * * [T]he Ohio General Assembly, in 1911 (102 Ohio Laws 524), enacted the first law pertaining to compensation for industrial injuries. This law was enacted without a specific constitutional genesis. However, the Act was followed by the adoption in 1912 of Section 35, Article II. It specifically empowered the General Assembly to provide for the compensation of injuries or occupational diseases 'occasioned in the course of such work-

---

[3] The term "idiopathic" is defined as "peculiar to the individual." Webster's Third New International Dictionary (1986) 1123. For workers' compensation purposes, idiopathic refers to an employee's pre-existing physical weakness or disease which contributes to the accident. 1 Larson, The Law of Workmen's Compensation (1985) 3-308, Section 12.00.

men's employment.' It also authorized the General Assembly to enact legislation providing for compulsory contribution by employers into a statewide fund in order to pay such awards.

"The constitutional provision and the derivative legislative acts were public policy trade-offs. Employees relinquished their right to bring common-law actions against their employers in exchange for *no-fault recovery, i.e.,* automatic entitlement to reduced benefits for such injuries. In addition, the employees would receive compensation considerably earlier. This trade-off, which obtained for the employee a certain and speedy recovery in exchange for granting a more limited liability to the employer, benefits employers, employees and the public alike." (Emphasis added.) See, also, *Fassig* v. *State, ex rel. Turner* (1917), 95 Ohio St. 232, 236-237, 116 N.E. 104, 105.

Other jurisdictions have recognized this principle as well: "The dual purpose of workmen's compensation legislation is to provide an injured employee a remedy which is both expeditious and *independent of proof of fault,* and secondly, to provide employers a liability which is limited and determinate. * * * In this manner the statute transfers from the worker, to the employer, and ultimately to the public, a greater portion of the economic loss due to industrial accidents. * * *" (Emphasis added.) *Shearer* v. *Homestake Mining Co.* (D. S.D. 1983), 557 F. Supp. 549, 552-553.

With this history of the purpose of workers' compensation in mind, this court has established that: "The test of the right to participate in the Workers' Compensation Fund *is not whether there was any fault or neglect on the part of the employer or his employees,* but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." (Emphasis added.) *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302, 303, 15 O.O. 3d 359, 360, 401 N.E. 2d 448, 449-450, citing *Indus. Comm.* v. *Weigandt* (1921), 102 Ohio St. 1, 130 N.E. 38; *Indus. Comm.* v. *Gintert* (1934), 128 Ohio St. 129, 190 N.E. 400; *Fox* v. *Schiele* (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E. 2d 1. Thus, there must be some causal connection between the employment and the injury. However, if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected. As discussed above, compensability is not dependent upon negligence or fault on the part of the employer. Therefore, it was not essential for appellee to show the presence of water, oil, or other foreign substances on the stairs.

An injury caused by an unexplained slip or fall presents a unique case under the workers' compensation laws. As Professor Larson notes: "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and 'neutral' risks—i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance." 1 Larson, The Law of Workmen's Compensation (1985) 3-12, Section 7.00. An employee suffering an unex-

plained slip or fall, such as in the case at bar, is described by Larson as an illustration of a case involving a "neutral" risk. Larson, *supra,* at 3-13 and 3-14, Section 7.30.

In this jurisdiction, a fall and resultant injury which arises solely from an idiopathic cause or a cause independent of employment would, ordinarily, not be compensable. See *Stanfield* v. *Indus. Comm.* (1946), 146 Ohio St. 583, 33 O.O. 70, 67 N.E. 2d 446. However, if the employment significantly contributed to the injury by placing the employee in a position which increased the dangerous effects of the fall, then a fall with an idiopathic cause would be compensable. See *Indus. Comm.* v. *Nelson* (1933), 127 Ohio St. 41, 186 N.E. 735.

"It should be stressed that the present question [internal weakness causing a fall], although often discussed in the same breath with unexplained falls, is basically different, since unexplained-fall cases begin with a completely neutral origin of the mishap, while idiopathic fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie showing of personal origin." Larson, *supra,* at 3-314, Section 12.11.

Appellant maintains that Ohio does not allow compensation in an unexplained-fall situation, citing *Eggers* v. *Indus. Comm.* (1952), 157 Ohio St. 70, 47 O.O. 71, 104 N.E. 2d 681, and *Postel* v. *Indus. Comm.* (1955), 163 Ohio St. 617, 57 O.O. 35, 128 N.E. 2d 29. In *Eggers,* a widow brought an action to recover workers' compensation benefits for the death of her husband which was alleged to have resulted from an injury received while he was engaged in his employment. Elmer Eggers was employed by Allis-Chalmers Manufacturing Company. At approximately 8:00 p.m. on May 6, 1942, while standing on the floor of the workroom, Eggers turned around and fell to the floor. His head was cut and he was unconscious. He was treated for a head injury and, later in the year, an operation was performed and a growth on the brain was removed. He died on January 8, 1943. In affirming the denial of benefits, the court found it highly significant that "[t]here was no evidence as to the character of work which he performed, or where he was standing when he fell, with respect to the place where he performed his work, or that he had been subjected to any unusual strain or unusual condition, or that any incident connected with his employment caused him to fall." *Id.* at 74, 47 O.O. at 73, 104 N.E. 2d at 683. The court proceeded to discuss cases from other jurisdictions where, in considering circumstances involving an unexplained fall, the courts assumed or inferred that the decedent was killed by an accident arising out of and in the course of his employment. This court emphasized that in those cases the circumstances were such as to indicate that the death occurred while the decedent was performing his duties and that there was no evidence to the contrary. It was concluded that "* * * [i]n the instant case this court is not required to and does not approve or reject either a rule of presumption or a rule of inference on the question of whether Eggers suffered a compensable injury. Such evidence as was presented in this case would not invoke either rule." *Id.* at 80, 47 O.O. at 75, 104 N.E. 2d at 686. The concurring opinion stressed the fact that "there is no evidence that the fall resulted from either *a slip, a trip, a misstep,* or a faint due to gases or unusual atmospheric conditions, and therefore no evidence that the fall and injury arose out of the employment."

(Emphasis added.) *Id.* at 82, 47 O.O. at 76, 104 N.E. 2d at 686 (Hart, J., concurring opinion).

Under the circumstances presented in the cause *sub judice,* where it may be shown that the unexplained fall results from a neutral origin, and recognizing the mandate that workers' compensation statutes be liberally construed in favor of the injured employee,[4] this court adopts the view that an inference will arise finding the fall to be traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises.[5]

Although the decision in *Postel, supra,* would appear to hold to the contrary, we question the validity of that decision. *Postel* also involved an action brought by a widow to recover death benefits for the death of her husband which was alleged to have resulted from an injury received while he was engaged in his employment. The decedent in that action had been employed as an elevator operator. Apparently, on the day in question, the decedent walked out of the elevator he was operating, "stood by the door for a short time, and fell to the floor of the lobby, sustaining a fracture of the skull, causing an intracranial hemorrhage resulting in death." *Id.* at 617, 57 O.O. at 35, 128 N.E. 2d at 30. This court affirmed the granting of a motion for a directed verdict for defendant and benefits were denied. The *Postel* court placed great importance on the fact that the floors of the lobby and elevator cab were dry and that the decedent had not slipped in water, grease or some other foreign matter. Again, as discussed earlier, this brand of reasoning tends to focus on fault or negligence in the determination of whether an injury is compensable or not. This is clearly not in accord with the purpose of workers' compensation.[6] Furthermore, the *Postel* decision was handed down prior to the existence of R.C. 4123.95.[7] In light of this fact and that *Postel* is based on unsound reasoning, we conclude that, to the extent that it is inconsistent with our decision today, it is hereby overruled.[8]

---

[4] R.C. 4123.95, which became effective on November 2, 1959, states: "Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

[5] This is not a novel doctrine. This rule in unexplained fall cases was initially established in an English case — *Upton* v. *Great Central Railway Co.* (H.L. 1924), A.C. 302, (1923) All E.R. Rep. 286. In that case an employee fell on a railway platform in the course of a business errand. The platform was not slippery or defective in any way; the cause of the fall was completely unknown. Lord Atkinson stated at 315, All E.R. Rep. at 293: "* * * [H]aving been done in the course of the employment of the deceased, and the accident having been caused by the doing of it even incautiously, it must, I think, be held that the accident arose out of the employment of the deceased." This holding was unanimous.

[6] As Judge Schneider so aptly noted in *Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18, 19, 39 O.O. 2d 11, 12, 225 N.E. 2d 241, 243: "If negligence of an employer is to cast the balance in favor of coverage under the Workmen's Compensation Act, he will have the best of both worlds. When an injury is occasioned by his default, he is shielded from heavy potential liability at common law. When, on the other hand, an injury occurs in the absence of his failure of a common-law duty, his experience rate is unaffected. We cannot approve this novel doctrine * * *."

[7] See fn. 4.

[8] "* * * [M]ere precedent alone is not sufficient to settle and establish forever, a

At this point in our analysis, we are well aware that a case could arise in which there is no direct evidence, with the claimant's theory being that the fall is unexplained, and the employer's theory being that the fall was caused by an idiopathic condition. Under the view adopted above, the inference would arise that the fall was traceable to some ordinary risk to which the employee was exposed on the employment premises. On the other hand, the finder of fact could also infer that the fall was caused by the idiopathic condition. Either inference would be reasonable. This possible set of facts would bring our decision in conflict with *Burens* v. *Indus. Comm.* (1955), 162 Ohio St. 549, 55 O.O. 436, 124 N.E. 2d 724, paragraph four of the syllabus, which states: "To permit a jury to make a choice between two irreconcilable inferences raised by the facts in evidence as to the existence of accidental injury is to substitute speculation and conjecture for proof; and in such a situation a jury question is not presented."

We continue to adhere to this view and, as a result, hold that in unexplained fall cases, the claimant has the burden of eliminating idiopathic causes. Therefore, we also hold that in a workers' compensation case where idiopathic causes for an unexplained fall have been eliminated, an inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises. Such a result does not relieve claimants of their burden of proving causal connection to employment. The inference is reasonable that the fall was caused by the employment environment once claimant meets his burden of eliminating idiopathic causes and there is no evidence that any force or condition independent of the employment caused the fall.

We do not find this to be an untenable view when it is considered that the claimant is engaged in the duties of his employment on his employer's premises and is exposed to the risks inherent in the work environment. Where the course of employment test is fully met, where cause-in-fact cannot be directly established, and where the claimant has met his burden of eliminating idiopathic causes, we interpret the Workers' Compensation Act to allow the inference that the unexplained fall arose out of the employment.[9]

In light of these foregoing pronouncements, it would not be proper to affirm the judgment of the trial court. Further development of the evidence by both parties is necessary. Accordingly, we reverse the judgment of the court of appeals and remand this cause to the court of common pleas for a new trial.

*Judgment reversed
and cause remanded.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

---

legal principle. * * * A legal principle, to be well settled, must be founded on *sound reason,* and tend to the *purposes of justice.* * * * Otherwise, it could never be said that law is the *perfection of reason,* and that it is the *reason* and *justice* of the law which give to it its *vitality.*" (Emphasis *sic.*) *Leavitt* v. *Morrow* (1856), 6 Ohio St. 72, 78.

[9] See *Phil A. Livesley Co.* v. *Russ* (1983), 296 Ore. 25, 672 P. 2d 337, and *Taylor* v. *Twin City Club* (1963), 260 N.C. 435, 132 S.E. 2d 865. See, also, *Elliot* v. *Indus. Comm.* (1987), 153 Ill. App. 3d 238, 505 N.E. 2d 1062, and *Chicago Tribune Co.* v. *Indus. Comm.* (1985), 136 Ill. App. 3d 260, 483 N.E. 2d 327.

126

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent in part and concur in part.

HOLMES, J., dissenting in part and concurring in part. I am in agreement with paragraph one and paragraph two of the syllabus of the majority opinion, but dissent from paragraph three of the syllabus and the judgment, in that I believe that the court of appeals' judgment should be reversed, and the judgment of the trial court should be reinstated.

The law that was pertinent here upon a Civ. R. 50(A)(2) motion for directed verdict weighed heavily in favor of the employer. "The test of the right to participate in the Workers' Compensation Fund is * * * whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302, 303, 15 O.O. 3d 359, 360, 401 N.E. 2d 448, 449-450; *Indus. Comm.* v. *Weigandt* (1921), 102 Ohio St. 1, 130 N.E. 38, paragraph two of the syllabus; R.C. 4123.01(C). The burden is on the claimant to "produce evidence which furnishes a reasonable basis for sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such burden." *Stevens* v. *Indus. Comm.* (1945), 145 Ohio St. 198, 30 O.O. 415, 61 N.E. 2d 198, paragraph three of the syllabus.

Appellee argues that he has met this burden by demonstrating a causal connection under the "totality of the facts and circumstances" test announced in *Lord* v. *Daugherty* (1981), 66 Ohio St. 2d 441, 20 O.O. 3d 376, 423 N.E. 2d 96. In *Lord,* this court held in the syllabus:

"Whether there is a sufficient 'causal connection' between an employee's injury and his employment to justify the right to participate in the Workers' Compensation Fund depends on the totality of the facts and circumstances surrounding the accident, including, (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident."

However, while it is arguably true that Waller was injured within his place of employment in an area under exclusive control of his employer and in a place of benefit to his employer, these three factors are not exclusive nor, in themselves, conclusive of the matter. Claimant must additionally establish that his injury "occurred in the course of and *arose out of* his employment." (Emphasis added.) *Eggers* v. *Indus. Comm.* (1952), 157 Ohio St. 70, 47 O.O. 71, 104 N.E. 2d 681, paragraph one of the syllabus. That is, he must produce evidence "showing a circumstance of activity, condition, or environment of employment *creating a hazard of employment greater than that to which the general public was exposed.*" *Postel* v. *Indus. Comm.* (1955), 163 Ohio St. 617, 618-619, 57 O.O. 35, 35-36, 128 N.E. 2d 29, 30.

Thus, Waller was here required to demonstrate that the steps he descended were in some sense "an added risk or hazard incident to the employment." *Stanfield* v. *Indus. Comm.* (1946), 146 Ohio St. 583, 585, 33 O.O. 70, 71, 67 N.E. 2d 446, 448; *Eggers, supra,* at 76, 47 O.O. at 74, 104 N.E. 2d at 684. This he failed to do, as there was no evidence to show the steps were other than dry, non-defective and free of any obstructions. "It is well established that the mere fact that in-

jury or death of an employee occurred while he was engaged in the employment is not sufficient to entitle a claimant to an award of compensation." *Eggers, supra,* at 77, 47 O.O. at 74, 104 N.E. 2d at 684. At best, Waller's evidence merely furnishes a basis for a choice among different possibilities as to the cause of the accident — whether it was work-related or idiopathic (a natural occurrence personal within himself). Thus, Waller failed to meet his burden of proof, and a directed verdict against him was warranted. The trial court's judgment should be reinstated.

Therefore, I dissent.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.