OPINION
In this action for personal injury that resulted from a fall from a moving golf cart, plaintiff-appellant Eileen Salem appeals from the trial court order that granted the motion for summary judgment filed by defendant-appellee Pleasant Hills Golf Club.[1] Appellee cross-appeals from the trial court's subsequent nunc pro tunc judgment entry that found "no just cause for delay" as to the order of summary judgment following appellant's voluntary dismissal of her remaining claims in the case.
Appellant argues numerous issues of fact remain concerning both the duty owed her by appellee and appellee's breach of a duty. Appellee, on the other hand, argues for dismissal of this appeal. Appellee asserts the trial court's nunc pro tunc journal entry was insufficient to dispose of appellant's remaining claims; thus, it contends no final order exists in this case.
This court has considered the record, finds it has jurisdiction to consider this appeal, and further finds the trial court's order of summary judgment was appropriate; therefore, the trial court's order is affirmed.
The instant action results from an incident that occurred on the afternoon of August 26, 1996. Appellant, a seventy-six-year-old woman, had driven her fourteen-year-old great-nephew Andrew Pugsley and his twelve-year-old cousin William Koval III to appellee golf course so the two boys could play golf.
Appellant previously had played golf with Pugsley at appellee approximately one week prior to this occasion. At that time, as she did on many other occasions, appellant had rented a golf cart and had permitted Pugsley to drive the cart; no mishaps had occurred to them on the previous occasions.
On this date, although she did not intend to play golf herself, appellant decided to rent a cart to facilitate the boys' golf game. As appellant paid for the cart at the clubhouse, she was presented with and signed a typewritten waiver form that stated as follows:
 In consideration of the rental of the above golf car ("Car") to me, I agree that (i) I shall return the Car immediately upon the completion of play in the same condition I received the Car, normal wear excepted; (ii) I shall pay for any damage whatsoever to the Car occurring while the Car is in my possession, custody or control; (iii) I am familiar with the operation of the Car and the risks associated therewith; (iv) I am able to safely operate and control the Car; (v) I ASSUME ALL RISK IN CONNECTION WITH MY USE OF THE CAR; and (vi) I shall indemnify SOUTH EAST GOLF CAR COMPANY, the GOLF COURSE, and their respective employees and agents, against any damage, loss or liability of any nature whatsoever arising out of my rental of the Car.
Appellee's rules and regulations required individuals who rented golf carts to "maintain a valid driver's license."[2]
Moreover, operators of golf carts were required to be licensed drivers; thus, "children under the age of sixteen" were not permitted to either "rent or otherwise operate" a golf cart.
After appellant paid and signed for the golf cart, the three of them obtained the keys.[3] Upon being informed that appellant did not intend to play, appellee's employee "said that the two [boys] should take turns" driving. Pugsley thereupon got behind the wheel and drove the cart to the first tee.
After Pugsley had driven the golf cart for a time, Koval began to drive. When the three reached the eleventh tee, Pugsley's ball went "left of the fairway in[to] the rough probably by about 30 feet * * *." They all reboarded the cart and proceeded in search of Pugsley's ball. Koval drove, and appellant sat between the two boys.
Koval drove down the left side of the fairway for a short distance, then entered "the rough." Koval then "turned the cart up the hill." As Koval executed this maneuver, Pugsley "thought [he] was going to fall so [he] jumped" out of the cart. Appellant at that point "just sat there, and that's when [she] realized the cart was going pretty fast." Appellant then "felt [a] jog and [she] flew" out of the cart. Appellant broke both of her hips in the fall.
Appellant subsequently instituted the instant action, naming as defendants Koval and his parents, appellee, and Southeast Golf Car Company.
Appellant alleged in count one of her complaint that Koval had "recklessly and negligently" driven the golf cart. In count two of her complaint, appellant alleged appellee and the golf cart company had been negligent in failing "to post a warning sign on the golf cart path approaching the ninth (sic) hole." Appellant further alleged these defendants were negligent in failing "to warn against allowing minor children * * * to drive golf carts."
Appellee answered the complaint with denials of the pertinent allegations and several affirmative defenses. Discovery thereafter proceeded in the action.
Eventually, appellee filed a motion for summary judgment. Appellee argued in its brief in support of the motion the evidence demonstrated any dangers posed to appellant were open and obvious; therefore, appellee owed appellant no duty to warn her as alleged in the complaint.
Appellee further argued that since appellant was engaged in a recreational activity and she did not plead that appellee acted either recklessly or intentionally, appellant was barred from recovery pursuant to Marchetti v. Kalish (1990), 53 Ohio St.3d 95. Finally, appellee asserted appellant's signature on the waiver form proved she assumed the risk of any injury resulting from the operation of the golf cart.
Appellee attached to its motion the following evidentiary materials: (1) a copy of the waiver form signed by appellant; (2) the affidavit of its owner, Sal Forlani, who stated he had "never rented a golf cart to anyone who is not over the age of sixteen (16) and who maintains a valid driver's license," stated the golf course did not allow children "to rent or otherwise operate" golf carts, and further stated "[t]o the best of [his] knowledge no employees * * * were aware that [appellant] had entrusted her golf cart" to the boys; and (3) a copy of appellant's deposition testimony.
Appellant responded with a brief in opposition to the motion, arguing since appellee had "superior knowledge" of the "inherent danger" in allowing children to operate golf carts, a jury question was raised concerning appellee's breach of a duty of care to appellant. Appellant further argued appellee's employee's encouragement of the boys' intention to drive in spite of appellee's rules to the contrary demonstrated either intentional or reckless behavior. Additionally, appellant argued the waiver form was ambiguous, inconspicuous and also constituted an unconscionable "adhesion contract"; therefore, the question of appellant's assumption of the risk could not be resolved by summary judgment.
Appellant attached to her brief the following evidentiary materials: (1) a copy of her deposition testimony; (2) a copy of Pugsley's deposition testimony; (3) a copy of the waiver form she signed; (4) appellee's answers to her first set of interrogatories; and (5) a copy of Forlani's affidavit.
Shortly after appellant's response to appellee's motion, appellant filed a notice of voluntary dismissal of the golf cart company from the action.
The parties each subsequently filed "reply briefs" in which they simply re-argued their positions; they presented no new evidentiary materials for the trial court's consideration.
The trial court thereafter issued a journal entry granting appellee's motion for summary judgment on the bases both that appellant had assumed the risk of the recreational activity and that appellant had failed to present evidence that appellee's actions were either reckless or intentional.
Appellant later filed a notice of voluntary dismissal of the remaining defendants. The trial court issued a journal entry noting this fact, then issued another journal entry amending nuncpro tunc its earlier order of summary judgment for appellee by adding the words "no just cause for delay."
Appellant filed a timely appeal from the foregoing order. Subsequently, appellee filed a notice of cross-appeal. Since appellee's assignment of cross-appeal challenges the jurisdiction of this court to consider appellant's appeal, it first must be addressed.
Appellee's cross-assignment of error states:
 THE TRIAL COURT WAS IN ERROR IN ITS NUNC PRO TUNC JUDGMENT ENTRY OF AUGUST 24, 1998 FINDING NO JUST CAUSE FOR DELAY AS TO THE TRIAL COURT'S ENTRY OF SUMMARY JUDGMENT ON JUNE 30, 1998 WHICH FAILED TO DISPOSE OF ALL CLAIMS AGAINST ALL PARTIES.
Relying mainly upon Lee v. Gross Lumber Co. (1989), 57 Ohio App.3d 52, appellee argues appellant's voluntary dismissal of the remaining parties pursuant to Civ.R. 41 (A) (1) did not dispose of her "action"; therefore, the trial court's nunc pro tunc
judgment entry could not become a final order. Appellee acknowledges this court's recent decisions on this issue have been in conflict with the Ninth Ohio Appellate District's interpretation of the law. See, e.g., Eason v. Johnson (July 22, 1999), Cuyahoga App. No. 74698, unreported.
Since appellee filed its notice of cross-appeal, moreover, the Ohio Supreme Court has issued its decision in Denham v. City ofNew Carlisle (1999), 86 Ohio St.3d 594. Therein, the supreme court held that an order of summary judgment meets the requirements of R.C. 2505.02 and further held it meets the requirements of Civ.R. 54 (B) when a plaintiff voluntarily dismisses the remaining parties to a suit. The court stated a plaintiff's Civ.R. 41 (A) notice of voluntary dismissal "render[s] the parties as if no suit had ever been brought, but only with respect to the parties dismissed"; it followed that "a trial court's decision granting summary judgment * * * for one of several defendants in a civil action becomes a final appealable order when the plaintiff voluntarily dismisses the remaining parties to the suit pursuant to Civ.R. 41 (A) (1)." (Emphasis added.)
The trial court's nunc pro tunc order in this case falls within the supreme court's description of a final appealable order as set forth in Denham. Therefore, this court has jurisdiction to consider this appeal.
Appellee's cross-assignment of error, accordingly, is overruled.
Appellant presents three assignments of error for this court's review. Since they are interrelated, they are addressed together as follows:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE PLEASANT VIEW GOLF CLUB.
 II. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF-APPELLANT ASSUMED THE RISK OF INJURY SINCE PLEASANT VIEW'S ACTIONS CREATED RISKS BEYOND THE ORDINARY RISKS OF RECREATIONAL ACTIVITIES.
 III. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF-APPELLANT PRESENTED NO EVIDENCE TO DEMONSTRATE THAT PLEASANT VIEW'S ACTIONS WERE RECKLESS OR INTENTIONAL.
Appellant argues she presented evidence that raised a jury issue with regard to appellee's breach of a duty of care toward her. This court finds it unnecessary to consider appellant's argument.
 Civ.R. 56 (C) provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, * * *.
Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64.
Summary judgment, therefore, is a procedural device utilized in order to terminate litigation and to avoid a formal trial where there is nothing to try. Norris v. Ohio Standard Oil Co. (1982),70 Ohio St.2d 1. Accordingly, a properly supported motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. Dresher v. Burt (1996), 76 Ohio St.3d 280; Wing v.Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108.
A trial court's decision on a motion for summary judgment is reviewed de novo since the propriety of the decision is a question of law. Temple v. Wean Limited, Inc. (1977), 50 Ohio St.2d 317
at 327-328.
To establish her claim against appellee, appellant had to show three essential elements: (1) a duty or obligation on the part of appellee to protect her from injury; (2) a breach of that duty; and (3) an injury proximately resulting from that breach. Wellmanv. East Ohio Gas Co. (1953), 160 Ohio St. 103, paragraph three of the syllabus; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142;Keister v. Park Centre Lanes (1981), 3 Ohio App.3d 19.
Although the parties have spent much energy debating whether or not appellant supported her burden with respect to the first two elements of her cause of action, it is unnecessary to enter into their debate since a review of the materials submitted to the trial court conclusively demonstrates appellant provided no evidence to establish any causal connection between appellee's action and her injury. Gedra v. Dallmer Co. (1950), 153 Ohio St. 258; Orens v. Ricardo's Restaurant (Nov. 14, 1996), Cuyahoga App. No. 70403, unreported; cf. Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607; Waller v. Mayfield (1988), 37 Ohio St.3d 118;Strother v. Hutchinson (1981), 67 Ohio St.2d 282.
In her deposition, appellant described the incident in the following manner:
Q. Bill was driving at that time?
A. Uh-huh.
Q. And where was Drew?
A. He was in the cart too, but he jumped out.
Q. Why did he jump out?
 A. Well, he said he thought if he didn't jump out, he would have fallen out.
Q. That's what he told you?
A. Uh-huh.
 Q. And when he jumped out, that means that you slid down the cart?
 A. No, I was — I didn't slide down, I just sat there, and that's when I realized the cart was going pretty fast. And then I felt the jog — when I realized that the cart was going very fast, I felt the jog, I was just going to say something but I never had a chance to say anything else, really. I felt the jog and I flew;
Q. What do you mean by a "jog?"
A. It felt like a jerk, like the cart jerked.
Q. Do you know why it jerked?
A. I have no idea.
 Q. Do you know if it was the operator who jerked the cart?
A. I have no idea.
Q. You weren't on a hill at the time, were you?
 A. I don't know. I don't think so. It seemed like there might have been a rock or something there, but I don't know that, see. That's what it would ordinarily feel like.
 Q. So, you have no knowledge as to what caused you to fall off?
A. No.
Q. You just felt a jog?
A. Uh-huh.
 Q. There wasn't anything dangerous on the golf course, was there?
A. No, not that I know of.
Q. And you noticed no problems with the cart?
A. No, not that I know of.
* * *
 Q. And what did [Pugsley] tell you, exact words; if you remember?
 A. He said that he jumped out because he knew he was going to fall out. And that's all.
Q. That's all?
A. Uh-huh.
Q. Did he tell you what caused you to fall out?
A. No, he had no idea.
 Q. And you don't know, as we sit here today, what caused you to fall out?
A. No. No, except that I felt that jerk, and I flew.
* * *
Q. Anything —
 A. No, I don't know what [Koval] could have done that would have caused the accident. He couldn't —
Q. You felt a bump?
A. Uh-huh.
Q. Or I think you said a "jog"?
A. Uh-huh, a jerk sort of.
Q. A jerk?
A. Uh-huh.
Q. And you don't know what caused that jerk?
A. No, I don't.
 Q. You certainly don't know that Billy [Koval] caused that jerk?
A. No.
(Emphasis added.)
Pugsley's deposition testimony was to the same effect. Pugsley stated:
 Q. Tell me why she fell out, what caused her to fall out?
 A. I think she just, I think she lost her balance or I think the cart was going so fast and she couldn't, she didn't have anything to hold onto so she kind of just rolled out. She rolled out.
* * *
 Q. Had she been sitting there with her back against the back?
A. I don't remember.
Q. Was she sitting forward?
A. No.
 Q. Okay. I just wonder why if the back, if she were is this kind of angle with her back down how she could have fallen off?
A. I don't know.
Q. What?
A. I don't know.
Q. Did she ever tell you?
A. No.
Q. You used the words speed before.
A. Uh-huh.
Q. When did the speed enter this picture?
 A. Well, when [Koval] went up the side of the hill, when he turned the cart up the hill he kind of, I don't know, seemed like he put on the gas. I thought he did, but I don't know why. I don't know.
 Q. Tell me that again. You do or you don't know that he gassed it.
 A. I think he did. I'm pretty sure he put on the gas when he turned on the side of the hill. I don't know why, but that's what it felt like. It felt like he was going a lot faster.
* * *
 Q. So the only thing that was said within 20, 30, 40 seconds of the accident was your statement that we ought to stop and get out and look for the ball?
A. Right.
 Q. Okay. Do you feel comfortable that you knew where your ball was generally?
 A. Generally, not exactly. I didn't know where it was specifically.
Q. That's not very thick rough there, is it?
A. It's kind of thick, it's not
Q. On the hill?
 A. It wasn't on the hill; it was kind of in front of the hill.
Q. You thought you didn't get up?
A. I didn't think I got up to the hill.
Q. Okay. We don't know what happened to it?
A. I don't know where it went.
(Emphasis added.)
Pugsley indicated he jumped before appellant felt the "jog," and he merely assumed appellant fell out because Koval was driving the cart too fast at the time.
 * * * [W]here the facts from which an inference of probable proximate cause must be drawn are such that it is as reasonable to infer other causes, plaintiff has failed to supply proof of probable cause. Where plaintiff has only presented proof that the actual cause was one of a number of possibilities, to enable an inference to be drawn that any particular cause is probable, the other causes must be eliminated.
Westinghouse Elec. Corp. v. Dolly Madison Corp. (1975), 42 Ohio St.2d 122
at 127.
It is clear from a perusal of the evidentiary materials filed in the trial court that appellant is only speculating that Koval's improper driving caused her to fall from the golf cart.Stibley v. Zimmerman (Aug. 26, 1998), Athens App. No. 97 CA 51, unreported. The evidence demonstrated, however, appellant's fall could have been caused by a number of other things: an unknown object such as a "rock" on the golf course; Pugsley's ball; or perhaps some malfunction of the steering mechanism of the golf cart. In short, appellant simply had "no idea" what caused her fall.
Appellant's failure to eliminate any of the other possible causes of her accident is dispositive of her negligence action against appellee. Barry v. Parking Properties, Inc. (July 9, 1998), Cuyahoga App. No. 73693, unreported; Guyton v. DeBartolo,Inc. (Nov. 4, 1993), Cuyahoga App. No. 65268, unreported; Allenv. C.G.S. Investments, Inc. (June 11, 1992), Cuyahoga App. No. 62947, unreported; see, also, Jennings v. Ameritrust Co. (Oct. 6, 1994), Cuyahoga App. No. 66867, unreported.
To paraphrase the supreme court's opinion in Gallagher v.Cleveland Brown Football Co. (1996), 74 Ohio St.3d 427 at 433-434, judicial economy favors resolving an issue on which the moving party is entitled to judgment pursuant to Civ.R. 56 at the most practicable time. Since appellant could not provide evidence to support all the necessary elements of her cause of action in negligence against appellee, the trial court properly granted summary judgment for appellee on appellant's complaint.
Accordingly, appellant's assignments of error are overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and ANNE L. KILBANE, J., CONCUR.
 ______________________________ JUDGE KENNETH A. ROCCO
[1] Appellee was denominated in error in appellant's complaint as "Pleasant View Golf Club."
[2] Quotes are taken from evidentiary materials filed in the trial court.
[3] There is some discrepancy in the evidence as to this event. Appellant could not recall if the keys were handed to her or to Pugsley; Pugsley recollected that the keys were handed to him in the clubhouse and also recollected that the keys were in the cart as they, accompanied by appellee's employee, approached it.