OPINION
Plaintiff, Myra Riley, appeals from a summary judgment entered in favor of Defendants, C. James Conrad, Administrator of the Bureau of Workers' Compensation, and Dayton Board of Education, on Riley's claim for Workers' Compensation benefits.
Riley worked for the Dayton Board of Education ("Board") as an educational assistant. On October 26, 1999, she struck her head on the sink of the ladies restroom at her place of employment. Riley suffered a head injury as a result.
Riley filed a workers' compensation claim for her injuries. The hearing officer recognized Riley's claim for benefits resulting from a "head injury, concussion." The Board appealed the hearing officer's decision, and the staff hearing officer vacated the prior claim allowance. Pursuant to R.C. 4123.519, Riley filed an appeal to the court of common pleas.
On December 20, 2000, the Board filed a motion for summary judgment. Riley opposed the motion. The trial court granted the Board's motion on March 21, 2001.
Riley filed timely notice of appeal. She presents four errors allegedly committed by the trial court under the heading "standard of review." We take these errors to be assignments of error pursuant to App.R. 16(A)(3).
[FIRST ASSIGNMENT OF ERROR]
 THE TRIAL COURT ERRED BY GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER OHIO RULE OF CIVIL PROCEDURE 56 WHEN GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO WHETHER THE APPELLANT'S INJURY OCCURRED IN THE COURSE OF HER EMPLOYMENT.
[SECOND ASSIGNMENT OF ERROR]
 THE TRIAL COURT MISAPPLIED THE EXISTING RULE OF LAW CONCERNING THE ALLOWANCE OF IDIOPATHIC INJURIES (SIC) IT DENIED THE APPELLANT (SIC) TO PROCEED AT TRIAL TO DETERMINE HER RIGHT TO PARTICIPATE AS A WORKERS' COMPENSATION CLAIMANT.
[THIRD ASSIGNMENT OF ERROR]
 THE DETERMINATION OF WHETHER THE PLAINTIFF'S PRIOR MEDICAL CONDITION CAUSED THE INJURY REMAINS A FACTUAL DETERMINATION TO BE MADE BY A JURY OF HER PEERS, AND NOT THROUGH SUMMARY PROCEEDINGS.
[FOURTH ASSIGNMENT OF ERROR]
 DEFENDANT'S ATTEMPT TO IDENTIFY THE PLAINTIFF'S INJURY AS AN OCCUPATIONAL DISEASE MISSTATES THE PLAINTIFF/APPELLANT'S CONDITION.
In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v. Lyles (1992), 63 Ohio St.3d 326. "Because a trial court's determination of summary judgment concerns a question of law, we apply the same standard as the trial court in our review of its disposition of the motion; in other words, our review is de novo." Am. States Ins. Co. v. Guillermin (1996), 108 Ohio App.3d 547, 552.
The moving party bears the initial burden of informing the trial court of the basis of the motion. Dresher v. Burt (1996), 75 Ohio St.3d 280. The moving party cannot discharge its burden by making a conclusory statement that the non-moving party has no evidence to prove its case, but instead must point to some evidence which, if true, requires a judgment for the moving party on one or more issues of fact determinative of the non-moving party's claim for relief or affirmative defense. Id. The non-moving party must then preserve the factual dispute concerning that issue by setting forth specific facts which, if true, keep it in dispute. Id.
The purpose of the Ohio workers' compensation system is to provide "* * * compensation to [workers] and their dependents, for death, injuries, or occupational diseases, occasioned in the course of such [workers'] employment * * * [.]" Section 35, Article II, Constitution. See, also, Ruddy v. Indus. Comm. (1950), 153 Ohio St. 475, paragraph one of the syllabus. The system does not make employers the absolute insurers of their employees' safety, however. Phelps v. Positive Action Tool Co. (1986), 26 Ohio St.3d 142. Rather, the system is meant to protect employees against the potentially devastating consequences of work-related injuries. Id. at 142. To this end, workers' compensation legislation should be "liberally construed in favor of employees and the dependents of deceased employees." R.C. 4123.95.
The Ohio Revised Code defines a workplace "injury" as any injury "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Therefore, inherent to the question of whether an employee is permitted to participate in the state's Workers' Compensation fund is "the causal connection between the injury and the activities, conditions, and environment of employment." MTD Prods., Inc., v. Robatin (1991), 61 Ohio St.3d 66.
When an injury is idiopathic in origin, that is, one that derives from a sickness or weakness peculiar to the claimant, it is not causally connected to employment. Waller v. Mayfield (1988), 37 Ohio St.3d 118,121, fn. 3. In workers' compensation cases involving an unexplained injury, the claimant has the burden of eliminating idiopathic causes. Id. at paragraph two of the syllabus. If the claimant is able to prove that the injury was non-idiopathic, "an inference arises that the [injury] is traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises." Id. at paragraph three of the syllabus.
When it moved for summary judgment the Board presented two affidavits of Phillip Bass. In both Bass identifies himself as a risk manager for the Board of Education and states that he investigated Riley's claim.
In her Bass affidavit marked Exhibit A, Bass states, inter alia:
 "4. In the course of my investigation I learned the following:
 a. The Plaintiff works as an educational assistant, otherwise known as a paraprofessional, for the Dayton Board of Education in which she assists teachers in the classroom.
 b. On October 26, 1999, upon exiting a restroom of the employer, the Plaintiff was witnessed by another para-professional complaining of dizziness from having stood up too fast after tying her shoes. She did not complain of hitting her head on any object. She was taken to the school nurse who examined her and found no head injuries. She again did not complain of any head injury whatsoever.
 c. The Plaintiff then was taken to an Urgent Care Center where again she did not complain of any head injuries, but only that she had severe dizziness and blurred vision.
 d. The Plaintiff has a known history of hypertension, diabetes, and she told the nurse that she had suffered a stroke in the summer preceding this incident."
The Bass affidavit marked Exhibit B attaches a medical report concerning Riley's treatment for the injuries she said she suffered. Bass states that the report "does not indicate any type of head injury or trauma."
A motion for summary judgment cannot be supported by an affidavit that consists of hearsay or other inadmissible evidence. Tolkes Son, Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621. Much of the evidence presented in the Bass affidavits is hearsay, and to that extent they were subject to a motion to strike. Riley filed no motion to strike. Therefore, the court was free to consider the evidence.
Riley did file a response to the summary judgment motion. Riley attached her own affidavit in which she stated, inter alia:
 "2. On October 26, 1999, I suffered an injury while at work when I struck my head on the sink in the restroom and was knocked unconscious, and, that;
 3. I was initially treated at Urgent Care and then came under treatment of my physician (sic), Morris Brown, MD, and, that;
 4. Dr. Brown's diagnosis of my injuries included close head injury and concussion, . . ."
Riley also attached a copy of Dr. Brown's medical report and a letter, in which Dr. Brown states:
 "This letter is written to inform you of the health status of Myra Riley. This 37-year-old female was in excellent health until she had a closed head injury on October 26, 1999 while at work. The patient stated she hit her head on a metal object in the ladies restroom, there was no loss of consciousness, and she felt dizzy and was not able to see clearly. The patient presented to the office for examination at which time she could only distinguish light.
 Myra Riley has been extensively evaluated by: Neurologist, Ophthalmologist, Psychiatrist and her family physician. It is their opinion she had a hysteric conversion reaction along with a concussion. She was referred for psychotherapy; she is under treatment at the present.
 It is with high degree of medical probability the hysteric conversion reaction is the result of the trauma to her head on October 26, 1999. She is very compliant with the therapeutic regime and I anticipate complete resolution of her symptoms and the return of her sight.
 Currently, she remains totally disabled and unable to maintain gainful employment."
The Board likewise failed to ask the court to strike the hearsay evidence in Dr. Brown's letter. Therefore, the court was authorized to consider it along with the other evidence.
In its motion for summary judgment the Board relied on Waller, supra, to argue that "[i]n unexplained fall cases, the claimant has the burden of eliminating idiopathic cause." (Motion, p. 5). The trial court agreed, finding that Riley had failed to produce any evidence "on the issue of the non-idiopathic nature of her injury." (Decision, p. 6).
The error assigned requires us to consider the burden imposed on Plaintiffs by the idiopathic injury rule of Waller, supra, and the burden imposed on parties who move for summary judgment by Dresher, v. Burt, supra.
Riley alleged in her petition to the common pleas court that she "had sustained an injury on or about October 26, 1999, in the course of and arising out of her employment with the (Board)." (Petition, paragraph 5). It is, of course, Riley's burden to prove both those propositions. However, when it moved for summary judgment the Board assumed the burden to show, at least for purposes of the motion, that Riley could not prove one or the other of those propositions. Per Dresher v. Burt, the Board was required to offer evidence to portray its claim.
The Bass affidavits on which the Board relied do not bring into dispute the cause of Riley's alleged injury so much as they dispute whether she was injured at all. In denying the existence of an injury, the Board's evidence raised no suggestion that the injury was idiopathic. Absent such a suggestion, Riley was not required to produce evidence that the injury was non-idiopathic in order for her claim to survive the Board's motion.
Riley cured the gaps in the Board's evidence with her own. She stated that she struck her head on the sink in the restroom and was knocked unconscious. Dr. Brown's letter states that Riley injured her head when "she hit her head on a metal object in the ladies room." Like Bass, Dr. Brown mentions dizziness, but doesn't say whether it preceded or followed Riley's fall. If, as Bass reported, Riley became dizzy when she stood up too fast after tying her shoes and then fell, striking her head, her head injury was idiopathic.
While the evidence the Board submitted was not especially cogent in relation to the point the Board attempted in its motion to make, that Riley's injury was idiopathic, the trial court was authorized to consider all the evidence before it, including that submitted by Riley, to resolve the issue. The court was required to construe the evidence most strongly in Riley's favor. Civ.R. 56(C). However, the court was not required to credit unsupported assumptions or to disregard inferences the evidence reasonably supports.
The Board satisfied its burden under Dresher v. Burt, supra, in relation to its claim that Riley's injury was idiopathic. It then became Riley's burden to "set forth specific facts showing that there is a genuine issue for trial." Id., p. 293. Riley produced none. And, there is no basis in the record to find that with respect to the injuries she suffered there is a causal connection between the injury and the activities, conditions, and environment of her employment. MTD Foods, Inc. v. Robatin, supra. It is undisputed that Riley's job duties were performed in the classroom, and she claims no particular risk or hazard in the restroom or its condition that caused her to fall or injure her head.
The assignments of error are overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J., and FAIN, J., concur.