******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

SHARON CLEMENTS *v.* ARAMARK
CORPORATION ET AL.
(SC 20167)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff appealed from the decision of the Compensation Review Board,
which affirmed the decision of the Workers' Compensation Commis-
sioner dismissing the plaintiff's claim for certain disability benefits.
While working for the defendant employer, the plaintiff, who had a
history of cardiac disease, among other conditions, and who was stand-
ing on a level surface, became lightheaded, passed out, fell backward,
and hit her head on the ground. The plaintiff was then taken to a hospital,
where she suffered cardiac arrest and was treated for her cardiac episode
and head trauma. In denying the plaintiff's claim for benefits, the commis-
sioner determined that the plaintiff's head injury did not arise out of
her employment but, rather, was caused by her cardiac condition, and,
therefore, was not a compensable injury. After the board upheld the
commissioner's decision, the plaintiff appealed to the Appellate Court,
which reversed the board's decision and remanded the case with direc-
tion to sustain the plaintiff's appeal. In doing so, the Appellate Court
relied on this court's decision in *Savage* v. *St. Aeden's Church* (122
Conn. 343), in which this court concluded that a head injury sustained
by an employee at his or her workplace due to a fall caused by the
employee's purely personal medical condition, i.e., an idiopathic fall,
was per se compensable. On the granting of certification, the defendant
employer and the defendant insurer appealed from the Appellate Court's
judgment to this court. *Held* that this court overruled its decision in
*Savage* to the extent that it held that an idiopathic fall on a level surface
occurring during the course of employment is compensable as a matter of
law, and, accordingly, this court reversed the Appellate Court's judgment
with direction to affirm the board's decision upholding the commission-
er's denial of the plaintiff's claim for benefits: because *Savage* was
predicated on a misapplication of prior precedent and out of step with
modern day, workers' compensation jurisprudence, this court instead
followed the prevailing view, adopted by a majority of jurisdictions, that
an employee's idiopathic fall at a workplace, occasioned by a personal
medical infirmity wholly unrelated to the employment, does not arise
out of that employment and is not compensable in the absence of some
evidence that the workplace conditions contributed to the harm by
increasing the risk of the resulting injuries; in the present case, the
plaintiff acknowledged that her head injury was precipitated by a per-
sonal medical infirmity unrelated to her employment, and, because she
did not challenge in the Appellate Court the board's determination that
there was no evidence in the record on the basis of which the commis-
sioner could have found that the hardness of the ground on which she
fell increased the risk of injury from her fall, she abandoned any claim
that her head injury was causally related to her employment and, there-
fore, compensable.

Argued October 25, 2019—officially released June 24, 2021**

*Procedural History*

Appeal from the decision of the Workers' Compensa-
tion Commissioner for the Second District dismissing
the plaintiff's claim for certain disability benefits,
brought to the Compensation Review Board, which
affirmed the commissioner's decision; thereafter, the
plaintiff appealed to the Appellate Court, *Keller, Pres-
cott* and *Bright, Js.*, which reversed the board's decision
and remanded the case to the board with direction to

sustain the plaintiff's appeal, and the defendants, on the granting of certification, appealed to this court. *Reversed; judgment directed.*

*Wesley W. Horton*, with whom were *Brendon P. Levesque* and, on the brief, *Dominick C. Statile*, for the appellants (defendants).

*Gary W. Huebner*, for the appellee (plaintiff).

*Robert F. Carter* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

PALMER, J. This certified appeal requires us to decide whether injuries that an employee sustains in the course of her employment also arise out of that employment, and therefore are compensable under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., when the injuries result from an idiopathic fall[1] from a standing position onto a level floor. The plaintiff, Sharon Clements, suffered a syncopal episode[2] at her place of employment, which caused her to lose consciousness, fall backward and strike her head on the ground. The Workers' Compensation Commissioner for the Second District (commissioner) denied her application for benefits, concluding that the head injury she suffered due to the fall did not arise out of her employment because the fall was brought on by a personal medical infirmity unrelated to her employment. The Compensation Review Board (board) affirmed the commissioner's decision, and the plaintiff appealed to the Appellate Court, which reversed the decision of the board. The Appellate Court concluded that, under *Savage* v. *St. Aeden's Church*, 122 Conn. 343, 189 A. 599 (1937), injuries sustained by an employee as a result of an idiopathic fall onto a level surface are compensable as a matter of law, as long as the fall occurred in the course of the employment, as it did in the present case. See *Clements* v. *Aramark Corp.*, 182 Conn. App. 224, 231–37, 189 A.3d 644 (2018). We granted the petition for certification to appeal, filed by the named defendant, Aramark Corporation, the plaintiff's employer, and its insurer, the defendant Sedgwick CMS, Inc.,[3] to decide whether the plaintiff's injury is compensable notwithstanding the commissioner's finding that the injury did not arise out of the plaintiff's employment.[4] Although we acknowledge that, under our reasoning in *Savage*, the Appellate Court was required to reach the result that it did, we now overrule *Savage* insofar as it concluded that an employee is entitled to compensation as a matter of law when, during the course of his or her employment, the employee is injured due to an idiopathic fall onto a level floor. In light of that determination, we further conclude that the decision of the board in the present case affirming the decision of the commissioner must be affirmed. Accordingly, we are constrained to reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "The plaintiff, while employed by the defendant, served as a mess attendant at the Coast Guard Academy in New London (academy). Her duties included serving food and beverages, and cleaning up after meals. She typically worked during both breakfast and lunch. On the morning of September 19, 2012, the plaintiff drove to work, parked her vehicle at the academy at approxi-

mately 5:40 a.m., and exited her vehicle. She walked a short distance from her vehicle to a building. The path was short, not uphill or inclined in any way. The plaintiff did not trip. The plaintiff testified that, after entering the building and walking down a hallway, she 'went through the door to go out to get into the next building,' where she became lightheaded and passed out, falling backward 'on the [asphalt],'[5] and hitting her head on the ground. No one witnessed her fall. After she was discovered by coworkers, someone called for assistance. Members of the New London Fire Department arrived and found the plaintiff 'lying on the ground' with 'a bump on the back of her head,' 'unable to sign [a] consent form because of her level of consciousness . . . .' The plaintiff was taken to Lawrence + Memorial Hospital (hospital). Hospital reports indicate that the plaintiff suffered from a syncopal episode and that she was diagnosed with ecchymosis and swelling.[6] A treating physician, Neer Zeevi, and hospital records, indicate that the plaintiff's syncope likely was cardiac or cardiogenic in etiology.

"While in the emergency room, the plaintiff suffered from cardiac arrest. During her stay in the hospital, the plaintiff had a pacemaker inserted. In a discharge summary report, John Nelson, a neurologist, opined: 'Apparently she had significant head trauma secondary to her fall. While in the emergency department, she again lost consciousness and was seen to have asystole[7] on monitoring. [Cardiopulmonary resuscitation (CPR)] was initiated and the patient had return of spontaneous rhythm and blood pressure shortly afterwards. Per the [emergency room] physician, CPR was reportedly begun within [twenty] seconds [of] onset of asystole and was . . . carried out [only] for approximately [ten] seconds before the patient experienced spontaneous return of rhythm.' . . .

"The plaintiff has a history of cardiac disease, hypertension, hyperlipidemia, hypothyroidism, and an irregular heartbeat. She also has a family history of coronary disease. Her discharge records set forth, inter alia, the following diagnosis: asystolic arrest, cardiogenic syncope with concussive head injury, and hypothyroidism. On the basis of these findings, the commissioner determined that 'the [plaintiff's] injury did not arise out of her employment with the [defendant] but was caused by a cardiogenic syncope.'

"The plaintiff appealed from the commissioner's decision to the board. She claimed, in relevant part, that the commissioner had misapplied the law and [incorrectly] determined that her injury did not arise out of her employment. The board disagreed, concluding that '[t]here is no question that the [plaintiff] has been left with a significant disability as a result of the concussive injury [that] is the subject of this appeal. Nevertheless, the [plaintiff] provided the . . . commissioner with no

evidence [that] would substantiate the claim that her employment contributed in any fashion to the fall [that] led to the injury or that the injury would not have occurred [if] the [plaintiff had] been somewhere else at the time.' Accordingly, the board affirmed the decision of the commissioner, ruling in favor of the defendant." (Footnotes altered.) Id., 225–28.

On appeal to the Appellate Court, the plaintiff claimed that the board incorrectly concluded that, because the plaintiff's fall was caused by her personal medical condition and not by any condition of her workplace, the injury she suffered from the fall did not arise out of her employment and, consequently, was not compensable. Id., 229. According to the plaintiff, her "injury arose out of her employment because it occurred on the premises of her employer when she hit her head on the ground before the start of her morning shift." Id., 231. In support of this contention, the plaintiff relied primarily on *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 346–50; see *Clements* v. *Aramark Corp.*, supra, 182 Conn. App. 231; in which this court concluded that the head injury sustained by the employee in that case due to his fall onto a level concrete floor at his workplace was compensable, even if the fall was caused by a preexisting medical condition, because the injury itself was caused by the employee's fall to the floor, which, we explained, was a potential hazard of his employment. See *Savage* v. *St. Aeden's Church*, supra, 345, 347. The defendant maintained that *Savage* was distinguishable on its facts and that the injury the plaintiff sustained in the present case did not arise out of her employment because the ground on which she struck her head was a not a hazard or condition of that employment for purposes of the act. See *Clements* v. *Aramark Corp.*, supra, 231, 234. The Appellate Court agreed with the plaintiff that *Savage* controlled the outcome of the present case; see id., 231, 236–37; and, further, that she was entitled to compensation even though the condition of her employment that caused her injury was not " 'peculiar' " to her employment; id., 236 n.6; a term this court previously has used in explaining the requirement that the injury must *arise out of* the employment to be compensable under the act. See, e.g., *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 274 Conn. 219, 238, 875 A.2d 485 (2005) ("conditions that arise out of employment are peculiar to [it], and not such exposures as the ordinary person is subjected to" (internal quotation marks omitted)). Accordingly, the Appellate Court reversed the decision of the board and remanded the case to the board with direction to sustain the plaintiff's appeal from the commissioner's adverse decision. *Clements* v. *Aramark Corp.*, supra, 237.

We granted the defendant's petition for certification to decide whether, as the Appellate Court concluded, the plaintiff was entitled to compensation for the injury she suffered as a result of her fall, despite the finding

of the commissioner that the injury did not arise of out of her employment. See *Clements* v. *Aramark Corp.*, 330 Conn. 904, 192 A.3d 425 (2018).[8] In support of its contention that the Appellate Court should have affirmed the decision of the board, the defendant renews its claim that the present case is distinguishable from *Savage* and, in addition, maintains that we should reconsider and reject our determination in *Savage* that an idiopathic fall to a level floor that occurs in the course of employment is compensable per se. Although *Savage* dictated the Appellate Court's conclusion that the plaintiff was entitled to compensation, we now disavow *Savage* insofar as we determined in that case that injuries resulting from such a fall arise out of the employment as a matter of law. As a consequence of our determination in that regard, we also conclude, in accordance with the decisions of the commissioner and the board, that the plaintiff's injury is not compensable.

The compensability issue raised by the present appeal is a relatively narrow one, but its resolution requires our consideration and application of a number of settled principles that are integral to the broader workers' compensation scheme. "[T]he purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . [Under the act, which] is to be broadly construed to effectuate [this] purpose . . . employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious. In a word, these statutes compromise an employee's right to a [common-law] law tort action for [work related] injuries in return for relatively quick and certain compensation." (Internal quotation marks omitted.) *Feliciano* v. *State*, 336 Conn. 669, 682–83, 249 A.3d 340 (2020). The act therefore "manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation." *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000). Because of the nature of the liability that the act imposes on employers, "to recover for an injury under the act a plaintiff must prove that the injury is causally connected to the employment." *Spatafore* v. *Yale University*, 239 Conn. 408, 417, 684 A.2d 1155 (1996); see also *Fair* v. *People's Savings Bank*, 207 Conn. 535, 545, 542 A.2d 1118 (1988) ("[t]he essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative" (internal quotation marks omitted)). To establish such a connection, the plaintiff must prove that the injury (1) arose out of the employment, and (2) occurred in the course of the employment. E.g., *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 274 Conn. 227. This two part test

derives from § 31-275, which provides in relevant part: "(1) 'Arising out of and in the course of his employment' means an accidental injury happening to an employee or an occupational disease of an employee originating while the employee has been engaged in the line of the employee's duty in the business or affairs of the employer . . . ."

"An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed. . . . The . . . requirement [that the injury must arise out of the employment] relates to the origin and cause of the accident, [whereas] the . . . requirement [that the injury must occur in the course of employment] relates to the time, place and [circumstance] of the accident." (Citations omitted; internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 274 Conn. 228. "[W]hether a plaintiff's injuries resulted from an incident that occurred in the course of the employment [therefore presents] a separate and distinct question from whether [those] . . . injuries arose out of [the] employment." *Daubert* v. *Naugatuck*, 267 Conn. 583, 591, 840 A.2d 1152 (2004).

General Statutes § 31-275 (16) (A) provides that " '[p]ersonal injury' or 'injury' includes, in addition to accidental injury that may be definitely located as to the time when and the place where the accident occurred, an injury to an employee that is causally connected with the employee's employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease." Thus, by its express terms, the act limits coverage to accidental injury, repetitive trauma injury or occupational disease that an employee sustains in the course of his or her employment. For purposes of the act, this court has characterized "accidental bodily injury" as "a localized abnormal condition of the living body directly and contemporaneously caused by accident; and an accident may be defined as an unlooked-for mishap or an untoward event or condition not expected. The concurrence of accident and injury is a condition precedent to the right to compensation." *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 162, 99 A. 507 (1916); see also *Vermont Mutual Ins. Co.* v. *Walukiewicz*, 290 Conn. 582, 594, 966 A.2d 672 (2009) ("[I]n construing the phrase 'accidental injury' . . . this court has defined 'accident' as '[a] . . . mishap or an untoward event or condition not expected.' . . . In short, the relevant inquiry in determining whether an accident has occurred is whether the injuries at issue were caused by . . . a sudden, unforeseen event." (Citation omitted.)).

Furthermore, it is "[a] 'fundamental principal of workers' compensation [law], present since the begin-

ning . . . that the employer takes the employee in whatever physical condition, with whatever predispositions and susceptibilities the employee may bear prior to his injury.' R. Carter et al., 19 Connecticut Practice Series: Workers' Compensation Law (2008) § 1:6, p. 13." *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 551, 108 A.3d 1110 (2015). Under this rule, sometimes referred to in tort cases—in which it also is applicable— as the eggshell plaintiff doctrine; see, e.g., *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 258 n.11, 117 A.3d 470 (2015); an employee who establishes a work related injury is entitled to compensation, even though a preexisting condition increased her susceptibility to incurring an injury or resulted in a more serious injury than otherwise would have been the case in the absence of the preexisting condition. See, e.g., *Richardson* v. *New Haven*, 114 Conn. 389, 391–92, 158 A. 886 (1932).

Because the defendant does not dispute that the plaintiff's injury occurred in the course of her employment, we confine our analysis to whether the injury— which, for purposes of this appeal, the plaintiff acknowledges was precipitated by a personal medical infirmity unrelated to her employment—also arose out of her employment. In other words, we must determine whether there is a sufficient causal connection between the plaintiff's injury and her employment so as to bring her claim within the purview of the act. See General Statutes § 31-275 (1) (B) ("[a] personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment").

"[A]lthough we often state that traditional concepts of proximate cause govern the analysis of causation in workers' compensation cases, our case law makes clear that, with respect to primary injuries, the concept of proximate cause is imbued with its own meaning. In such cases, [t]he employment may be considered as causal in the sense that it is a necessary condition out of which, necessarily or incidentally due to the employment, arise the facts creating liability, and that is the extent to which the employment must be necessarily connected in a causal sense with the injury. If we run over the cases in which compensation has been awarded, it will be found to be rarely true—although it may be true—that the employment itself was, in any hitherto recognized use of the words in law, either the cause or the proximate cause; and yet the decisions are right, because, to the rational mind, the injury did arise out of the employment. The real truth appears to be that . . . [t]he causative danger need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that as a rational consequence." (Internal quotation marks omitted.) *Sapko* v. *State*, 305 Conn. 360, 379–80 n.13, 44 A.3d 827 (2012).

Thus, "[a]n injury arises out of an employment when it . . . is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. . . . Sometimes the employment will be found to directly cause the injury [such as when an employee is injured while operating machinery], but more often it arises out of the conditions incident to the employment. But in every case there must be apparent some causal connection between the injury and the employment, or the conditions under which it is required to be performed, before the injury can be found to arise out of the employment." (Internal quotation marks omitted.) *Mascika* v. *Connecticut Tool & Engineering Co.*, 109 Conn. 473, 476–77, 147 A. 11 (1929).

"[A]n injury [that] is a natural and necessary incident or consequence of the employment, though not foreseen or expected, arises out of it. . . . An injury of this description is one of the risks of the employment, for it is due to it and arises from it, either directly, or as incident to it, or to the conditions and exposure surrounding it." (Internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 274 Conn. 237–38. "Incidental" in this context "has been defined as something [that] happens as a chance or undesigned feature of something else; casual, hence not of prime concern; subordinate; collateral." *Stakonis* v. *United Advertising Corp.*, 110 Conn. 384, 390, 148 A. 334 (1930). "[An] activity is incidental to the employment [and therefore compensable] . . . [i]f the activity is regularly engaged in on the employer's premises within the period of the employment, with the employer's approval or acquiescence . . . ." *McNamara* v. *Hamden*, 176 Conn. 547, 556, 398 A.2d 1161 (1979). We have said, therefore, that, if an employee "slip[s] and [is] injured while walking from one place of work to another on his employer's premises in the course of his work, it [can] hardly be claimed that the injury did not arise out of the employment."[9] (Internal quotation marks omitted.) *Gonier* v. *Chase Cos.*, 97 Conn. 46, 51, 115 A. 677 (1921); see also *McNamara* v. *Hamden*, supra, 555–56 (concluding that injured worker's participation in ping pong game on employer's premises before start of workday was incidental to worker's employment on basis of finding by commissioner that employer sanctioned such games by regulating permitted playing times, allowing ping pong equipment on premises, and setting aside actual work hours for games).

In this respect, and in keeping with the remedial nature and humanitarian spirit of the act; see, e.g., *DiNuzzo* v. *Dan Perkins Chevrolet GEO, Inc.*, 294 Conn. 132, 150, 982 A.2d 157 (2009); our decisions reflect a relatively "[broad] conception of employment and of the nature of the risks arising out of it . . . ." *Mascika*

v. *Connecticut Tool & Engineering Co.*, supra, 109 Conn. 479. Indeed, as this court previously has observed, "[a]n injury [that] occurs in the course of the employment will ordinarily [also] arise out of the employment . . . ." (Internal quotation marks omitted.) *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 244, 902 A.2d 620 (2006); see, e.g., *Puffin* v. *General Electric Co.*, 132 Conn. 279, 280, 282, 43 A.2d 746 (1945) (injuries sustained by factory worker whose sweater caught on fire during smoking break were compensable when commissioner found, inter alia, that cigarettes were sold to employees at factory and employer maintained break room "where smoking was permitted and ash trays provided"); *Mascika* v. *Connecticut Tool & Engineering Co.*, supra, 475, 481 (injury that employee suffered when he was struck by stick thrown by coworkers engaging in horseplay before start of workday arose out of employment because employer was aware that employees frequently engaged in such activity and failed to stop it). We also have made clear, however, that an injury that occurs in the course of the employment does not invariably or necessarily arise out of it; see, e.g., *Blakeslee* v. *Platt Bros. & Co.*, supra, 279 Conn. 244; because the latter requirement will be met only if "[t]he rational mind [is] able to trace . . . [the] injury to a proximate cause set in motion by the employment and not by some other agency . . . ." (Internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, supra, 207 Conn. 546; see, e.g., id., 537, 544–46 (death of bank employee who was fatally shot by her boyfriend inside bank did not arise out of her employment because dispute culminating in shooting was unrelated to her employment); *Porter* v. *New Haven*, 105 Conn. 394, 395, 397, 135 A. 293 (1926) (death of fireman who hit his head on fire station floor after being pushed in jocular manner by visitor to fire station did not arise out of fireman's employment because risk to which he was subjected was "not . . . incidental to his employment as a fireman [or] to the conditions under which he was required to perform his duties, and there was no causal connection between the injury and the employment").

Consistent with the liberality with which the act is to be construed, this court held more than one century ago, in *Saunders* v. *New England Collapsible Tube Co.*, 95 Conn. 40, 110 A. 538 (1920), that, when an employee is injured at a place where her duties required her to be, or where she might properly have been while performing those duties, there is a presumption, albeit a rebuttable one,[10] that the injury occurred during the course of her employment and arose out of it. Id., 43; see id. ("[t]here is a natural presumption that one charged with the performance of a duty, and found injured at the place where duty may have required him to be, is injured in the course of and as a consequence of the employment"); see also *Keeler* v. *Sears, Roebuck Co.*, 121 Conn. 56, 59, 183 A. 20 (1936) (same); *Judd* v.

*Metropolitan Life Ins. Co.*, 111 Conn. 532, 536, 150 A. 514 (1930) (same). "[T]he presumption is one resting on common experience and inherent probability [that] as such ceases to have force when countervailing evidence is produced, although the facts [that] gave rise to it remain in the case." *Labbe* v. *American Brass Co.*, 132 Conn. 606, 611–12, 46 A.2d 339 (1946); see id., 608, 612 (when employee was found dead inside of grease tank, employer rebutted presumption that employee's death arose out of employment with evidence that employee's duties did not require him to be anywhere near tank, and he was not otherwise discharging any employment related duties or furthering employer's business at time of his death).

Thus, in *Reeves* v. *John A. Dady Corp.*, 95 Conn. 627, 113 A. 162 (1921), we upheld the commissioner's denial of benefits to a widow whose husband fainted and fell to his death from a second floor doorway, explaining that, "[had there been] no direct evidence of the cause of his injury and death, it [nonetheless could] be inferred [in accordance with *Saunders* v. *New England Collapsible Tube Co.*, supra, 95 Conn. 40] that [the decedent] went there for some purpose connected with his employment." *Reeves* v. *John A. Dady Corp.*, supra, 629. We concluded, however, that the commissioner reasonably found that the inference had been rebutted by evidence indicating that the decedent had not proceeded to the doorway for any work related reason and that his idiopathic fall was not otherwise brought about by his employment.[11] Id.; see also, e.g., *Allen* v. *Northeast Utilities*, 6 Conn. App. 498, 502–503, 506 A.2d 166 ("The import of [the rebuttable presumption recognized by] *Saunders* and its progeny leads to the conclusion that without evidence to the contrary, the fact that [an employee] is found deceased at his or her place of employment will support a finding that the injury arose out of and was a consequence of the employment. . . . The . . . burden [of the plaintiff, the decedent's widow] was to establish by competent evidence that the death for which compensation was sought arose out of and in the course of the employment. . . . Although she may have received the benefit of the presumption, the facts introduced by [the decedent's employer] provide[d] sufficient evidence from which the trier could reasonably conclude that the [employer] satisfied its burden of proving the contrary, and we will not override the commissioner in deciding that factual issue." (Citations omitted.)), cert. denied, 199 Conn. 810, 508 A.2d 771 (1986).

We are not alone in applying such a presumption in cases involving injuries from unexplained causes and, in particular, injuries from unexplained falls. In his comprehensive treatise on the law of workers' compensation, Professor Arthur Larson observes that most jurisdictions "confronted with the [unexplained fall] problem have seen fit to award compensation"; 1 L. Larson &

T. Robinson, Larson's Workers' Compensation Law (2019) § 7.04 [1] [a], p. 7-26; and some states, like Connecticut, do so "on the strength of a presumption, either judicial or statutory, that injury or death occurring in the course of employment also arises out of the employment in the absence of evidence to the contrary." Id., c. 7, p. 7-1. The rationale for awarding compensation to an employee who "falls while walking [on] the sidewalk or across a level factory floor for no discoverable reason" is that "[t]he particular injury would not have happened if the employee had not been engaged upon an employment errand at the time." Id., § 7.04 [1] [a], p. 7-25; see also id., § 7.04 [1] [a], pp. 7-25 through 7-26 ("[i]n a pure [unexplained fall] case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that this [but for] reasoning satisfies the 'arising' requirement"). In other words, "[a]n injury [from an unexplained fall] arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the employee] in the position where [the employee] was injured." (Emphasis in original; internal quotation marks omitted.) *Circle K Store No. 1131* v. *Industrial Commission*, 165 Ariz. 91, 96, 796 P.2d 893 (1990). The employee "would not have been at the place of injury *but for* the duties of her employment." Id. As we previously noted, injuries sustained as a result of an unexplained fall are compensable in the majority of jurisdictions, primarily because of the remedial purpose of workers' compensation statutes.

Unlike an unexplained fall, "[a]n idiopathic fall is one that is brought on by a purely personal condition unrelated to the employment, such as heart attack or seizure. . . . Idiopathic [falls] are generally noncompensable absent evidence the workplace contributed to the severity of the injury. . . . The idiopathic fall doctrine is based on the notion that an idiopathic injury does not stem from an accident, but is brought on by a condition particular to the employee that could have manifested itself anywhere. . . . The adjective accidental qualifies and described the injuries contemplated by the statute as having the quality or condition of happening or coming by chance or without design, taking place unexpectedly or unintentionally. If one becomes ill while at work from natural causes, the state or condition is not accidental since it is a natural result or consequence and might be termed normal and to be expected." (Citations omitted; internal quotation marks omitted.) *Barnes* v. *Charter 1 Realty*, 411 S.C. 391, 395–96, 768 S.E.2d 651 (2015).

Thus, "[w]hen an employee, solely because of a non-occupational heart attack, epileptic fit, or fainting spell, falls and sustains a skull fracture or other injury, the question arises whether the skull fracture . . . is an injury arising out of the employment.

"The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. . . .

"It should be stressed that the present question, although often discussed in the same breath with unexplained falls, is basically different, since [unexplained fall] cases begin with a completely neutral origin of the mishap, while idiopathic fall cases begin with an origin [that] is admittedly personal *and* [*that*] *therefore requires some affirmative employment contribution to offset the prima facie showing of personal origin.*" (Emphasis added; footnotes omitted.) 1 L. Larson & T. Robinson, supra, § 9.01 [1], pp. 9-2 through 9-3.

As this discussion suggests, the case law generally distinguishes between two types of idiopathic falls, namely, those that result in injuries unrelated to workplace conditions, and those in which workplace conditions contribute to the harm by increasing the risk of resultant injuries. See, e.g., *Stapleton* v. *Industrial Commission*, 282 Ill. App. 3d 12, 16, 668 N.E.2d 15 (1996) (if employment significantly contributed to injuries from idiopathic fall by placing employee in position of greater risk from falling, injuries are compensable); *Maroulakos* v. *Walmart Associates, Inc.*, 300 Neb. 589, 596, 915 N.W.2d 432 (2018) (injuries from idiopathic fall are compensable if employment placed employee in position that increases dangerous effects of such fall); *Waller* v. *Mayfield*, 37 Ohio St. 3d 118, 123, 524 N.E.2d 458 (1988) (injuries from fall with idiopathic cause are compensable if employment significantly contributed to injury by placing employee in position that increases dangerous effects of fall).

The increased danger rule, also known as the increased risk rule, is widely accepted; see, e.g., *Maroulakos* v. *Walmart Associates, Inc.*, supra, 300 Neb. 596 ("[a] vast majority of courts nationally have adopted the [increased danger] rule"); and was applied by this court in *Gonier* v. *Chase Cos.*, supra, 97 Conn. 52–53, in which we upheld an award to a widow whose husband, Joseph Gonier, fell to his death from a scaffolding suspended "some eleven feet above the [ground] . . . ." Id., 48 (summary of facts before official opinion). Shortly before his fall, Gonier had gone to his employer's dispensary complaining of indigestion. Id. "[Upon] returning from the dispensary he worked awhile, and then, apparently again feeling uncomfortable, he sat down on the platform where he was painting, smoked a cigarette, stood up, or partly stood up, to resume work, and then fell backward to the [ground] below . . . ." Id., 49 (summary of facts before official opinion).

The issue before this court in *Gonier* was whether

the commissioner properly had determined that "the death of Gonier resulting from a fall from the staging, caused by a temporary unconsciousness due to disease, constitute[d] an injury arising out of his employment . . . ." Id. (official opinion). In support of its contention that it did not, Gonier's employer argued that the proximate cause of the injury was the idiopathic condition that brought about the fall and not the fall itself. See id., 49–50. Applying the increased danger rule, we ruled against the employer, concluding that Gonier's death arose out of his employment because "[his] employment brought him [on] this scaffolding, from which, if he fell, he was in danger of serious injury. The danger of falling and the liability of [the] resulting injury [were] risk[s] arising out of the conditions of his employment." Id., 54–55.

Professor Larson observes that, "[i]nevitably there arrive the cases in which the employee suffers an idiopathic fall while standing on a level surface, and in the course of the fall, hits no machinery, bookcases, or tables. At this point there is an obvious temptation to say that there is no way of distinguishing between a fall onto a table and a fall onto a floor, since in either case the hazard encountered in the fall was not conspicuously different from what it might have been at home. A distinct majority of jurisdictions, however, have resisted this temptation and have denied compensation in [level fall] cases. The reason is that the basic cause of the harm is personal, and that the employment does not significantly add to the risk." (Footnote omitted.) 1 L. Larson & T. Robinson, supra, § 9.01 [4] [a], pp. 9-7 through 9-8; see also, e.g., *Evans* v. *Hara's, Inc.*, 123 Idaho 473, 480, 849 P.2d 934 (1993) ("A fall onto a level surface precipitated by an alcohol withdrawal seizure is just as likely to happen at home, on the sidewalk, or in any other situs [that] a worker may frequent outside of the workplace. We therefore hold that an injury resulting from an idiopathic fall at the workplace does not arise out of employment and is not compensable under [the Idaho workers'] compensation system without evidence of some contribution from the workplace. In so holding, we are consistent with the majority of jurisdictions [that] have considered this question."); *Prince* v. *Industrial Commission*, 15 Ill. 2d 607, 611–12, 155 N.E.2d 552 (1959) ("concrete floors present no risk of hazard that is not encountered in many places, and . . . such risks and perils as they do present are only those [that] confront all members of the public"); *Cinmino's Case*, 251 Mass. 158, 159, 146 N.E. 245 (1925) (causal connection between work conditions and injury was too remote and speculative to warrant compensation when injury resulted from idiopathic fall to concrete floor); *Appeal of Kelly*, 167 N.H. 489, 495, 114 A.3d 316 (2015) ("[w]hen we reach consideration of the idiopathic fall to the level floor, not from a height, not [onto] or against an object, not caused or induced by

the nature of the work or any condition of the floor, we are dealing with an injury [that] is in no real sense caused by any condition, risk or hazard of the employment" (internal quotation marks omitted)); *Dasaro* v. *Ford Motor Co.*, 280 App. Div. 266, 268, 113 N.Y.S.2d 413 ("[The injured employee] makes the point that the floor of the employer's premises is as useful and as special in the employer's enterprise as the radiator, the chair, the laundry table or the wagon wheel. But the ground below is a universal and normal boundary on one side of life. In any epileptic [or grand mal seizure] anywhere the ground or a floor would end the fall."), appeal denied, 280 App. Div. 902, 115 N.Y.S.2d 309 (1952); *Stanfield* v. *Industrial Commission*, 146 Ohio St. 583, 585–86, 67 N.E.2d 446 (1946) ("[T]he floor was in no sense an added risk or hazard incident to the employment. The decedent's head simply struck the common surface [on] which he was walking—an experience that could have occurred to him in any building or on the street irrespective of his employment. The fall resulted from the seizure alone and not from any circumstance of his employment."); *In re Compensation of Hamilton*, 256 Or. App. 256, 262, 302 P.3d 1184 ("[The employee's] work environment, which required standing on a hard kitchen floor, is unlike situations [in which] the employer has placed the worker in settings that may greatly increase the danger of injury, such as by requiring her to stand on a ladder or an elevated platform or to stand next to a dangerous object that would have caused severe injury had she fallen on it. Instead, she fell on level ground onto the floor. There was nothing special about the floor or the height from which she fell that greatly increased the danger of injury."), review denied sub nom. *Hamilton* v. *SAIF Corp.*, 354 Or. 148, 311 P.3d 525 (2013); *Zuchowski* v. *United States Rubber Co.*, 102 R.I. 165, 173–74, 229 A.2d 61 (1967) ("The majority of cases deny compensation for level floor, idiopathic falls. . . . The fact that the floor [on which the] petitioner fell was cement does not . . . supply the necessary element of special risk [that] would make his injuries compensable. Floors of all nature and kind are a normal and customary part of one's life be one at home or work. We do not believe that the composition of the floor in and of itself should be the determining factor as to whether there is a special risk incident [to] one's employment." (Citation omitted; footnote omitted.)); *Bagwell* v. *Ernest Burwell, Inc.*, 227 S.C. 444, 454, 88 S.E.2d 611 (1955) ("To say that an injury arises out of the employment in every case [in which] an employee was required to be at the place where the injury occurred would effectively eliminate [the 'arising out of'] requirement of the statute. We are not prepared to accept the contention that, in the absence of special condition or circumstances, a level floor in a place of employment is a hazard. Cement floors or other hard floors are as common outside industry as within it. The floor in [this] case did not create

a hazard [that] would not be encountered on a sidewalk or street or in a home where a hard surface of the ground or a hard floor existed.").

Thus, under the majority view, if an employee is injured from a fall onto a level floor caused by a personal medical infirmity unrelated to the employment, and the conditions of that employment did not increase the risk or severity of the injuries, so that the fall would have occurred in the same manner and with a similar result if it had occurred outside of the employment, the causal relationship between the employment and the injury is insufficient to support a finding that the latter arose out of the former. In other words, in such circumstances, although the floor is a but for cause of the employee's injuries, it is not a *proximate* cause of those injuries.

A few courts, however, have held that an idiopathic fall to a level floor is compensable. In one such case, *Employers Mutual Liability Ins. Co. of Wisconsin* v. *Industrial Accident Commission*, 41 Cal. 2d 676, 263 P.2d 4 (1953), the California Supreme Court explained its reasoning as follows: "[I]t is not a ground for annulling the award of compensation that the employee might have had a fall (resulting in bodily injury) caused by an idiopathic condition but occurring at home, on the street or elsewhere when he was tending to his private affairs. The fact remains that he injured himself at work, on his employer's premises, the injury being the striking of his head against the [concrete] floor, a condition incident to the employment. His condition may have been a contributory cause, but it was not the sole cause of his injury. It would not be doubted that if an employee fell to the ground or floor in the course of his employment, and as a result was injured, the injury would be compensable whether the cause of the fall was a slippery or defective floor, or was due to nothing more than his innate awkwardness or even carelessness. Certainly, resolving all doubts in favor of the [Industrial Accident] [C]ommission's finding that the injury arose out of the employment, compels an affirmance of the award [of compensation]." Id., 680; see also *Dependents of Chapman* v. *Hanson Scale Co.*, 495 So. 2d 1357, 1360 (Miss. 1986) ("Without contradiction [the employee's] death was caused when his head struck the concrete floor of his employer's premises [as a result of an idiopathic fall]. We regard the floor as an appurtenance of the employer's premises the same as any other piece of equipment or fixture. We see no appreciable difference between a worker's collision with another piece of equipment, a table or a trash can, which would be compensable . . . on the one hand, and a collision with a concrete floor, on the other. Both are collisions by the worker with an appurtenance of the employment, both are encounters by the worker with an employment risk, both contribute to injury or death and, as a matter of law, both arise out of and in the course of employment." (Citation omitted.)); *George*

v. *Great Eastern Food Products, Inc.*, 44 N.J. 44, 47, 207 A.2d 161 (1965) ("If the employee is caused to fall idiopathically and is located in the course of his employment at even a slight height at the fall's inception or is standing at floor level and on the way down falls into a pit or strikes a table, chair, desk, stove, machinery or some other object situate on the employment premises, the resulting injury is compensable. . . . Seemingly also, he would be compensated if, through sheer awkwardness, he tripped over his own feet and fell to the floor or, by reason of a congenitally weak back, fell on his head when leaning over to pick up a pencil. But not so [the defendant employer claims] . . . if he suffered a spontaneous attack of vertigo and struck nothing but the floor during his descent from a standing posture. The distinctions are neither consistent nor meaningful. Either no consequence of an idiopathic fall should bring compensability, or the nature of the result alone should be looked to as the determinant. We think the latter principle ought to govern . . . ." (Citations omitted.)).

This court employed an analysis similar to this minority view in *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 343, in upholding an award of compensation for injuries resulting in the death of the employee in that case. Id., 346–50. We therefore must decide whether to adhere to that reasoning for purposes of the present case. As we explain hereinafter, although we remain confident that we reached the right result in *Savage*, we now conclude that we did so on the basis of reasoning that was not necessary to the proper outcome of the case. Moreover, the rationale underlying our decision in *Savage*, which was predicated on a misapplication of our prior precedent, is out of step with modern day workers' compensation jurisprudence relating to injuries stemming from idiopathic causes. In fact, until the Appellate Court was called on to apply *Savage* in the present case, to our knowledge, it had never been cited by any other court of this state for the proposition that injuries sustained as a result of an idiopathic fall are compensable, even if a condition of the employment did not increase the risk of injury from the fall. Insofar as there remains a question as to *Savage*'s continued vitality, our decision today should serve to dispel it.

The facts of *Savage*, as recounted in the opinion, are as follows: "Joseph Savage was in the employ of the defendant St. Aeden's Church, and on the morning of October 21, 1935, entered the rectory of the church shortly after 8 [a.m.]. He was not seen alive again. About [4:30 p.m.] . . . his body was found on the floor of the recreation room which was in the basement of the rectory. He was lying flat on his back, his overalls partly on, a painter's cap by his head, and on the [pool table nearby] his bag with the paint brushes he expected to use in his work at the rectory. He had apparently fallen backward on the concrete floor and fractured his skull.

[The plaintiff, his widow, brought a workers' compensation claim on his behalf.] The commissioner found that the proximate cause of his death was the fracture of his skull [on] the concrete floor, and that the cause of his fall was unknown, though he also found that [in] . . . 1934, [Savage] was suffering from a cystolic murmer at the apex of his heart. He further found that the fatal injury arose out of and in the course of the employment [and, accordingly, awarded compensation under the act. The Superior Court upheld the commissioner's award.]" Id., 344–45.

On appeal from the judgment of the Superior Court, the defendant "[sought] a correction of the finding that the cause of [Savage's] fall was unknown, to the effect that it was due to a fainting spell or a heart attack" because, "if the fall was due to causes outside of the employment [that is, the heart attack], the resulting [head] injury was not due to a hazard of the employment, and there [could] be no recovery." Id., 346. In her brief to this court, the plaintiff argued that the commissioner reasonably could have concluded that Savage "lost his balance putting on overalls" for no discernible reason and, therefore, that the presumption of compensability recognized in *Saunders* v. *New England Collapsible Tube Co.*, supra, 95 Conn. 40, should apply. *Savage* v. *St. Aeden's Church*, Conn. Supreme Court Records & Briefs, December Term, 1936, Pt. 2, Plaintiff's Brief p. 179 ("[i]t is submitted that a presumption arose in favor of the claimant after the presentation of her case, which became conclusive when [the defendant] rested without offering evidence [to rebut it]"). She further argued, however, in the alternative, that, under *Gonier* v. *Chase Cos.*, supra, 97 Conn. 46, "[w]hether the fall was caused by [a] progressive heart ailment, as claimed by the [defendant], or by [Savage's] losing his balance in putting on his overalls, is not material" because the commissioner found "that [Savage's] fatal injury [arose out of] a condition of [his] employment, viz., the hard concrete floor. The record in its entirety amply supports this finding. In short, the [present] case is the *Gonier* case, with the concrete floor factor displacing the scaffold" in *Gonier*. (Internal quotation marks omitted.) *Savage* v. *St. Aeden's Church*, Conn. Supreme Court Records & Briefs, supra, p. 178.

This court agreed with the plaintiff's alternative contention that she was entitled to prevail under *Gonier* but not for the reason the plaintiff had advanced, that is, because the church's concrete floor increased the risk of injury from a fall just as the scaffolding had increased that risk in *Gonier*. Rather, our conclusion in *Savage* upholding the commissioner's decision was predicated on our characterization of *Gonier* as "holding that an injury received in the course of the employment does not cease to be one arising out of the employment merely because some infirmity due to disease has

originally set in action the final and proximate cause of the injury. The employer of labor takes his [employee] as he finds him and compensation does not depend [on] his freedom from liability to injury through a constitutional weakness or latent tendency. 'Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it.' *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 543, 97 [A.] 1020 [1916]; [see also] *Richardson* v. *New Haven*, [supra, 114 Conn. 392].” *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 346–47. We then proceeded to explain: “[In this case], as in the *Gonier* case, the fall was the immediate cause of the injury; and the constitutional weakness of the employee, which was claimed by the [defendant] to be the cause of the fall, is not an element to be considered in determining whether the injury arose out of the employment.” Id., 347. “It is not necessary that the place where the employee is working be in itself a dangerous one. It is enough if it turns out that there was a hazard from the fact that the accident happened. The height from which the employee fell would not change the liability, though it might aggravate the extent of the injury. [Thus] [c]ompensation was awarded in the *Gonier* case, not because [Gonier's] employment brought him [on] a scaffold, a fall from which would expose him to serious injury, but because the possibility of a fall while engaged in his work was one of the hazards of his employment. The decision would have been the same had the fall been, as in the present case, simply to the floor [on] which the employee was standing.”[12] Id., 349–50.

In *Gonier*, however, as we have explained, we concluded that Gonier's injuries were compensable because his employment required him to work on scaffolding eleven feet off the ground such that, if he were to fall for any reason at all, including an idiopathic one, he faced a significantly increased risk of injury. See *Gonier* v. *Chase Cos.*, supra, 97 Conn. 52–55. Indeed, we emphasized this very point in *Gonier*, quoting as follows from a factually similar case: “How does it come about in the present case that the accident arose out of the employment? *Because by the conditions of his employment the [employee] was bound to stand on the edge of . . . a precipice, and if in that position he was seized with a fit he would almost necessarily fall over. If that is so, the accident was caused by his necessary proximity to the precipice, for the fall was brought about by the necessity for his standing in that position.* Upon the authorities . . . the case is clear: an accident does not cease to be such because its remote cause was the idiopathic condition of the injured [employee]; we must dissociate that idiopathic condition from the other facts *and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by*

*the conditions of that employment.*" (Emphasis added; internal quotation marks omitted.) Id., 52–53. In other words, we determined that a condition of Gonier's employment—namely, that he was required to stand on scaffolding eleven feet off the ground in order to accomplish the painting task assigned to him—increased the risk that he would be injured, and, for purposes of the act, that increased risk became the operative cause of his death, effectively superseding the idiopathic cause that originally had set in motion the chain of events culminating in his death and thereby rendering the fall compensable.[13] See id., 54–55.

In *Savage*, however, the commissioner *rejected* the employer's contention that Savage's fall was caused by an idiopathic condition, finding instead that the cause was unknown and, therefore, that the injuries were compensable because the employer had not rebutted the presumption, established by this court in *Saunders* v. *New England Collapsible Tube Co.*, supra, 95 Conn. 40, that Savage's injuries arose out of his employment. See *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 345. So long as the record fairly supported the commissioner's finding, which it clearly did, that finding was unassailable on appeal. See, e.g., *Sapko* v. *State*, supra, 305 Conn. 373 ("The question of [whether the employment proximately caused the injury] . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.)); *Fair* v. *People's Savings Bank*, supra, 207 Conn. 539–40 ("If supported by evidence and not inconsistent with the law, the . . . [c]ommissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the . . . [c]ommissioner is factually questionable." (Internal quotation marks omitted.)). Rather than uphold the decision of the commissioner on that basis, however, this court, relying on certain language from our earlier decision in *Hartz* v. *Hartford Faience Co.*, supra, 90 Conn. 539, reasoned that it was immaterial whether the cause of Savage's fall was unknown—which, as the commissioner properly found, made his injuries compensable under *Saunders*—or the result of a heart attack, which, we concluded, also gave rise to a compensable injury. *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 346–47. As we explain hereinafter, we misapplied *Hartz* in *Savage* because, as we underscored in *Hartz*, injuries from whatever derivation do not arise out of the employment merely because they occur in

the course of it; they arise out of the employment, rather, only if the circumstances or requirements attendant to the employment, acting on the condition of the employee, proximately cause the injuries. See *Hartz* v. *Hartford Faience Co.*, supra, 543.

In *Hartz*, the injured employee, Hartz,[14] a shipping clerk, attempted to lift a heavy barrel during the course of his employment and, while doing so, aggravated a preexisting hernial condition that resulted in his death. Id., 540; see id., 542–43. His widow sought compensation under the act, and, by way of defense to the claim, his employer argued that, because it was unaware that Hartz had a hernial condition when it hired him, "he was not, as [a] matter of law, entitled to compensation as a result of a strain from lifting, which aggravated his condition and led to his death." Id., 542. In rejecting the employer's contention, this court invoked the principle that an employer takes an employee as he finds him, stating in relevant part: "By the terms of [the] . . . [a]ct, compensation is not made to depend [on] the condition of health of the employee, or [on] his freedom from liability to injury through a constitutional weakness or latent tendency. It is awarded for a personal injury arising out of and in the course of his employment, and for an injury [that] is a hazard of that employment. As Chief Justice [Arthur Prentice] Rugg point[ed] out in [*In re Madden*], 222 Mass. 487, [494] 111 N.E. [379] [1916], [i]t is the hazard of the employment acting [on] the particular employee in his condition of health and not what that hazard would be if acting [on] a healthy employee or [on] the average employee. *Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it.*" (Emphasis added; internal quotation marks omitted.) *Hartz* v. *Hartford Faience Co.*, supra, 90 Conn. 543. It was this last sentence from *Hartz* that we quoted in *Savage* as support for the proposition that an injury resulting from an idiopathic fall is compensable, so long as the employment is the "immediate occasion of the injury . . . ." (Internal quotation marks omitted.) *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 347. In *Savage*, however, the court omitted the next several sentences from this court's decision in *Hartz*, in which we made clear that the term "occasion of the injury" means the *cause* of the injury, not merely the time or place of the injury. See *Hartz* v. *Hartford Faience Co.*, supra, 347. Specifically, we explained as follows in *Hartz*: "When the exertion of the employment acts [on] the weakened condition of the body of the employee, or [on] an employee predisposed to suffer injury, in such way that a personal injury results, the injury must be said to arise out of the employment. An employee may be suffering from heart disease, aneurism, hernia, as was . . . Hartz, or other ailment, *and the exertion of the employment may develop his condi-*

*tion in such a manner that it becomes a personal injury. The employee is then entitled to recover for all consequences attributable to the injury.*"[15] (Emphasis added.) Id., 543–44.

This court subsequently has had occasion to apply this principle with specific reference to our opinion in *Hartz*. For example, in *Triano* v. *United States Rubber Co.*, 144 Conn. 393, 132 A.2d 570 (1957), the record revealed that the plaintiff, Louis Triano, sustained a work related back injury in 1943 from which he never fully recovered. Id., 395. Although he suffered back pain from time to time during the next ten years as a result of that injury, he never sought compensation on the basis of those episodes. Id. On June 10, 1953, however, while at work, Triano developed more severe back and leg pain, and, by the next day, his discomfort was so great that he was unable to work. Id. Approximately one week later, Triano had surgery for a herniated disc; id., 395–96; and he subsequently sought compensation under the act, claiming, in reliance on his surgeon's opinion concerning the cause of the herniation, that, while working on June 10, 1953, Triano "was cutting [certain] material [that] required squeezing down hard on a knife" and that "the pressure so exerted probably caused the disc to herniate, thereby producing the injury" that required surgery. Id., 396. The commissioner, however, was not persuaded by the surgeon's testimony regarding the cause of the injury, apparently because the surgeon had conceded that the herniation could have been brought about by a sneeze, cough or some other movement not itself caused by the employment. Id., 398–99. After the commissioner denied the employee's claim for compensation, the trial court rendered judgment affirming the commissioner's decision; see id., 399; and we affirmed the trial court's judgment. See id.

In doing so, we explained, first, that Triano "correctly claim[ed] that an injury may arise out of an employment although the risk of injury from that employment is no different in degree or kind [from that] to which [the employee] may be exposed outside of his employment." (Internal quotation marks omitted.) Id., 397. Thus, we agreed with Triano that he was entitled to compensation if he could establish that he had herniated his disc while cutting material at work, even if he would have suffered the same injury while engaged in the same or similar activity outside of work. See id. We then stated that Triano was "also correct in claiming that the antecedent physical condition of an employee is immaterial in that there is no norm or minimum standard of physical stamina or freedom from disease [that] he must meet." Id., 397–98. Citing *Hartz* v. *Hartford Faience Co.*, supra, 90 Conn. 543, we also reiterated that a work related injury is no less compensable merely because the employee's preexisting condition made him more susceptible to such an injury or because the injury caused an aggrava-

tion of that condition. *Triano* v. *United States Rubber Co.*, supra, 144 Conn. 398. However, as we further explained: "[Triano] gains nothing from this rule, since it does not appear that the commissioner denied compensation under any theory that if the employment caused an aggravation or lighting up of an antecedent back weakness there would be no compensable injury. The commissioner merely failed to find that the employment had anything to do with the injury." Id. In other words—and contrary to our reasoning in *Savage*—an *otherwise compensable injury*, that is, one that is causally related to the employment, is no less compensable merely because the employee had a preexisting condition that increased the risk or likelihood of injury or made him more susceptible to serious injury. Clearly, the foregoing discussion in *Triano* represents a proper explication of our statement in *Hartz* that an injury arises out of the employment if that employment is the "immediate occasion" of the injury, whereas our reference to *Hartz* in *Savage* reflects an incorrect application of that principle. Fortunately, we have never repeated the analytical error we made in *Savage*.[16]

In that regard, we cannot agree with the statement of the Appellate Court in the present case that we "reaffirmed [our] reasoning in *Savage* in the case of *Blakeslee* v. *Platt Bros. & Co.*, [supra, 279 Conn. 239]." *Clements* v. *Aramark Corp.*, supra, 182 Conn. App. 235. It is true that we quoted from *Savage* in *Blakeslee*, but we did not utilize the same flawed reasoning as in *Savage*. In *Blakeslee*, the plaintiff, Michael G. Blakeslee, Jr., suffered a grand mal seizure at work and fell to the ground, unconscious, near a large steel scale. *Blakeslee* v. *Platt Bros. & Co.*, supra, 240–41. The seizure itself did not give rise to a compensable injury. Id., 240. As he regained consciousness, however, "he began flailing around, swinging his arms and kicking his legs," prompting three coworkers to come to his aid. Id., 241. "The three men, in an attempt to prevent [Blakeslee] from injuring himself, as well as others, restrained [Blakeslee]. They held [Blakeslee's] arms down to the floor while [he] attempted to break free from the restraint. As a result, [Blakeslee] suffered dislocations of both of his shoulders. [He] initially sought treatment and ultimately surgery from . . . an orthopedic surgeon. [The surgeon] thereafter reported that he had concluded, on the basis of a reasonable medical certainty, that [Blakeslee's] shoulder dislocations were a result of the restraint, not the seizure." Id. Blakeslee thereafter filed a claim for compensation under the act. See id., 240.

Notwithstanding the surgeon's opinion concerning the cause of Blakeslee's injuries, the commissioner concluded that those injuries did not arise out of his employment because "[t]he chain of causation [that] resulted in . . . [his] shoulder injuries was set in motion by the . . . grand mal seizure," which was unrelated to Blakeslee's employment. (Internal quota-

tion marks omitted.) Id., 241. The board upheld the commissioner's decision, concluding that, because Blakeslee's seizure was not compensable, "the resulting injury from his coworkers' application of first aid similarly was not compensable." Id., 242. We reversed the decision of the board. Id., 252. In doing so, we observed that, because the underlying facts were not in dispute; see id., 242; the sole question presented was the propriety of the "single proposition" that "the commissioner and the board began with . . . [and] from which all other conclusions inexorably followed, namely, that, if [Blakeslee's] seizure was a noncompensable injury, any injuries causally connected thereto similarly must [have been] noncompensable." Id., 245.

Before answering that question in *Blakeslee*, we set forth a number of well established workers' compensation principles, quoting *Savage* for the proposition that an employer is not relieved of liability merely because an employee's preexisting condition had made his injury, otherwise traceable to the employment, more likely or more serious. See id., 245–46. We cited this principle, however, not because it was dispositive of Blakeslee's claim but only to establish that compensation was not *necessarily* precluded merely because the events culminating in Blakeslee's injury were set in motion by a personal infirmity. See id., 245–47. We explained, rather, that, in determining whether an injury arises out of the conditions of employment, "the normal reactions of men to those conditions are to be considered. . . . [Thus] the right of an employee to recover compensation is not nullified by the fact that his injury is augmented by natural human reactions to the danger or injury threatened or done. . . . In assessing such natural human reactions, we have stated that, [w]henever an employer puts his employees at work with fellow servants, the conditions actually existing—apart from the possibility of wilful assaults by a fellow servant independent of the employment—[that] result in injury to a fellow employee, are a basis for compensation under the implied contract of th[e] [a]ct. . . .

"It seriously cannot be questioned that a risk exists in the workplace that an employee might fall stricken to the ground, thereby prompting the natural, foreseeable reaction of coworkers to render aid. With respect to the employer's liability for injuries arising from such actions, in his treatise, Professor . . . Larson sets forth the general proposition that . . . the scope of an employee's employment is impliedly extended in an emergency to include the performance of any act designed to save life or property in which the employer has an interest. . . . The most common type of rescue case is the rescue of coemployees, and compensation is clearly payable for injuries so sustained, on the theory that the employer has a duty to aid its own employees in peril and that any employee is impliedly authorized to discharge this duty in an emergency. . . . Courts

have recognized under similar statutory schemes that . . . [a] reasonable rescue attempt . . . may be one of the risks of employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute. . . . *O'Leary* v. *Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 507, 71 S. Ct. 470, 95 L. Ed. 483 (1951)." (Citations omitted; internal quotation marks omitted.) *Blakeslee* v. *Platt Bros. & Co.*, supra, 279 Conn. 246–48.

Thus, we did not conclude that Blakeslee's injuries were compensable as a matter of law, as we had in *Savage*. Had we done so in *Blakeslee*, there would have been no reason for the extended discussion of the rescue doctrine; our initial reference to *Savage* would have been the beginning and the end of our analysis. We determined in *Blakeslee*, rather, that an injury sustained in the course of the employment may be found to arise out of the employment, even though the chain of events culminating in the injury were set in motion by an idiopathic condition, *if the employment, or a condition incidental thereto*—such as the efforts of Blakeslee's coworkers to assist him after he collapsed—was also a proximate cause of the injury. See id., 245–47. In other words, a "[p]reexisting disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the [idiopathic] disease or infirmity to produce the death or disability for which compensation is sought. This is sometimes expressed by saying that the employer takes the employee as it finds that employee." (Footnotes omitted.) 1 L. Larson & T. Robinson, supra, § 9.02 [1], p. 9-16.[17]

For all these reasons, we agree with the defendant that the present case provides an appropriate occasion for this court to disavow our reasoning in *Savage*. As we have explained, that reasoning was based on a misreading of this court's prior precedent, it was not otherwise persuasive, and it was unnecessary to the correct outcome of the case. Moreover, we have never applied that reasoning in any subsequent case, and it is contrary to the substantial weight of authority. Although, as we also have noted, a small handful of courts hold that injuries resulting from an idiopathic fall to a level floor are compensable, Professor Larson—who characterizes those cases as representing the "significant minority" view—observes that "on close examination of the facts and opinions in these cases, the number is not as large as it has sometimes been thought to be." Id., § 9.01 [4] [a], p. 9-8. In fact, Professor Larson identifies *Savage* as one of those cases, explaining that *Savage* "is weakened by the fact that the [level fall] holding was not necessary to the decision" and, consequently, that "[m]ost of the [decision] partakes of the nature of dictum, since the [commissioner's] finding was that the cause of [Savage's] fall was unknown"; id., § 9.01D [4] [a], p. D9-27; a finding that itself would have resulted

in an award of compensation.

We agree with Professor Larson's comments about *Savage*, and we also agree with his observation that, when a fall is brought about by a personal medical infirmity wholly unrelated to the employment, there is "ample reason to assign the resulting loss to the employee personally. . . . To shift the loss in the [idiopathic fall] cases to the employment, then, it is reasonable to require a showing of at least some substantial employment contribution to the harm." Id., § 9.01 [4] [b], p. 9-8. Although workers' compensation law does not attempt to ascertain "the relative contributions of employment and personal causes" to an injury, "the employment factor . . . must be real, not fictitious." Id., § 9.01 [4] [b], p. 9-9. In other words, "[c]ompensation law attempts no . . . weighing of intangibles [with respect to such causes]. But it does know the difference between something and nothing, and it rightly requires that the employment contribute something to the risk, before pronouncing the injury one arising out of the employment." Id. As we have explained, it is for this reason that, historically, compensation for idiopathic falls to a level floor generally has been denied, and virtually every court that has addressed the issue in the last several decades has adopted that same position. See, e.g., *Askins* v. *Kroger Ltd. Partnership I*, 535 S.W.3d 629, 631–33 (Ark. 2018) (employee who suffered idiopathic fall was not entitled to compensation for her resulting head injuries because no work related condition increased dangerous effect of fall); *Burdette* v. *Perlman-Rocque Co.*, 954 N.E.2d 925, 930–32 (Ind. App. 2011) (employee's idiopathic fall to concrete was not compensable because area where fall occurred did not increase his risk of falling or dangerous effects of fall); *Dugan* v. *Sabre International*, 39 P.3d 167, 169–70 (Okla. Civ. App. 2001) (injuries resulting from idiopathic fall were not compensable because there was no evidence establishing that hazard from falling was increased by any condition of employment); *In re Compensation of Sheldon*, 364 Or. 831, 835, 441 P.3d 210 (2019) (because risk of injury from idiopathic fall to floor is personal to employee, employee cannot establish that injury resulting from such fall arose out of employment).

Under this prevailing view, courts have determined, as a matter of law, that the hardness of the floor onto which the employee fell does not alone render the employee's injuries compensable if the sole cause of the fall was an idiopathic one. See, e.g., *Gates Rubber Co.* v. *Industrial Commission*, 705 P.2d 6, 7 (Colo. App. 1985) (concrete floor); *Evans* v. *Hara's, Inc.*, supra, 123 Idaho 477, 480 (cement floor); *Prince* v. *Industrial Commission*, supra, 15 Ill. 2d 611–12 (concrete floor); *Kovatch* v. *A.M. General*, 679 N.E.2d 940, 943–44 and n.6 (Ind. App.) (concrete floor), transfer denied sub nom. *Kovatch* v. *General Worker's Comp.*, 690 N.E.2d

1184 (Ind. 1997); *Ledbetter* v. *Michigan Carton Co.*, 74 Mich. App. 330, 336–37, 253 N.W.2d 753 (1977) (concrete or cement floor); *Luvaul* v. *A. Ray Barker Motor Co.*, 72 N.M. 447, 454–55, 384 P.2d 885 (1963) (concrete floor); *Harris* v. *Ohio Bureau of Workers' Compensation*, 117 Ohio App. 3d 103, 104–105, 690 N.E.2d 19 (1996) (concrete floor), appeal denied, 78 Ohio St. 3d 1467, 678 N.E.2d 223 (1997); *In re Compensation of Hamilton*, supra, 256 Or. App. 261–62 (brick floor); *Zuchowski* v. *United States Rubber Co.*, supra, 102 R.I. 174 (cement floor); *Bagwell* v. *Ernest Burwell, Inc.*, supra, 227 S.C. 447, 454–55 (concrete floor); *Kraynick* v. *Industrial Commission*, 34 Wis. 2d 107, 112–13, 148 N.W.2d 668 (1967) (hard tile floor).

A recent decision of the Iowa Supreme Court introduces the possibility that the question addressed in the foregoing cases should be determined as a factual rather than a legal matter. See *Bluml* v. *Dee Jay's, Inc.*, 920 N.W.2d 82, 92 (Iowa 2018). In *Bluml*, which involved an idiopathic fall to a ceramic tile floor; id., 83; the court concluded, under the increased risk test previously adopted in Iowa, that, whether the hardness of the floor increased the risk of injury is a question of fact to be decided by the commissioner on a case-by-case basis. See id., 92 ("[i]n sum, we conclude that whether injuries suffered in an idiopathic fall directly to the floor at a workplace [arise] out of . . . employment is a factual matter, not a legal one" (internal quotation marks omitted)); see also id., 91 ("[I]n [idiopathic fall] cases . . . the [employee] should have both the burden and the opportunity to meet the [increased risk] test. . . . That is, there is no [hard and fast] rule in Iowa that idiopathic falls onto level floors are never compensable. Nor is there a legal principle that idiopathic falls to hard floors are always compensable. Rather, the [employee] may recover if he or she proves that a condition of his [or her] employment increased the risk of injury." (Citation omitted; internal quotation marks omitted.)). Because the workers' compensation commissioner in *Bluml* had denied compensation on the ground that it was precluded as a matter of law, the court remanded the case for further fact finding. Id., 92.

For present purposes, we need not foreclose the possibility that an employee may be able to establish, in any given case, that, as a factual matter, the hardness of the floor increased the risk of harm from the fall so as to render the resulting injuries compensable under the increased risk rule. In the present case, however, the commissioner made no finding in that regard, and the plaintiff did not seek a correction or articulation from the commissioner with respect to that issue.[18] On appeal to the board, the plaintiff claimed that the evidence did not support the commissioner's finding that she suffered an idiopathic fall rather than an accidental one but that, even if it did, "the cement floor where

she struck her head constituted a condition of her employment" that increased the risk of injury from the fall, such that the resulting injury was compensable. In rejecting this claim, the board observed that "it may be reasonably inferred [from the record] that the trier did not consider the surface [on] which the [plaintiff] fell to be a 'dangerous condition' of the employment, and there is nothing in the evidentiary record to persuade [the board] that the . . . commissioner should, or even could, have found otherwise." The plaintiff did not challenge this determination in the Appellate Court, stating instead that the composition of the ground—concrete or otherwise—made no difference with respect to the merits of her argument on appeal. See *Clements* v. *Aramark Corp.*, supra, 182 Conn. App. 226 n.1; see also footnote 5 of this opinion. Under the circumstances, the plaintiff must be deemed to have abandoned any claim that her injury was causally related to her employment—and therefore compensable—based on the theory that the hardness of the ground on which she fell increased the risk of injury from the fall.

The plaintiff contends more broadly that it would be anomalous to construe the act as covering injuries "caused by the inadequacy of personal judgment or clumsiness"—in other words, injuries resulting from employee negligence, due to inadvertence, ineptitude or otherwise—but not those precipitated by a fall caused by personal illness or disease. To the contrary, the purpose of the act was to create a no-fault system to compensate employees for accidental injuries that occur in the course of and in connection with the employment. See, e.g., *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 146, 93 A. 245 (1915) ("by eliminating the proof of negligence, by minimizing the delay in the award and by making it reasonably certain, [the act] seeks to avoid the great waste of the tort action and to promote better feeling between [employee] and employer, and accepts, as an inevitable condition of industry, the happening of accident, and charges its cost to the industry"). As we have explained, and consistent with this purpose, the act expressly limits coverage to three categories of personal injury, namely, accidental injury, which we have defined as injury caused by a sudden and unforeseen mishap, repetitive trauma injury causally connected with the employment, and occupational disease; see General Statutes § 31-275 (16) (A); and it is axiomatic that "the act's definition of three categories of compensable personal injury is exclusive." *Grady* v. *St. Mary's Hospital*, 179 Conn. 662, 668, 427 A.2d 842 (1980). "[A]n idiopathic injury," however, "does not stem from an accident, but is brought on by a condition particular to the employee that could have manifested itself anywhere." *Barnes* v. *Charter 1 Realty*, supra, 411 S.C. 396.

The plaintiff further maintains that the related principles of stare decisis[19] and legislative acquiescence[20]

counsel against departing from the reasoning that we employed in *Savage*. We disagree. With respect to the former, we already have explained that our reasoning therein was fundamentally flawed, we have not again employed that reasoning in the eighty-four years since we decided *Savage*, and it was unnecessary to our resolution of that case. Though a most important principle, stare decisis is neither "an inexorable command [nor] an absolute impediment to change"; (internal quotation marks omitted) *Mangiafico* v. *Farmington*, 331 Conn. 404, 425 n.8, 204 A.3d 1138 (2019); and we are not persuaded that it should be controlling here. For similar reasons—in particular, because we reached the right result in *Savage* and our reasoning was not outcome determinative—we also are unpersuaded that the legislature's failure to take corrective action following *Savage* fairly can be viewed as approval of our reasoning and analysis in that case.

We also note that, although "the act indisputably is a remedial statute that should be construed generously to accomplish its purpose"; (internal quotation marks omitted) *Blakeslee* v. *Platt Bros. & Co.*, supra, 279 Conn. 245; it is equally well established that "the legislature did not intend . . . to transform the [act] into a general health and benefit insurance program . . . ." (Internal quotation marks omitted.) *Estate of Doe* v. *Dept. of Correction*, 268 Conn. 753, 767, 848 A.2d 378 (2004); see also, e.g., *Madore* v. *New Departure Mfg. Co.*, 104 Conn 709, 715, 134 A. 259 (1926) (explaining that test requiring direct causal relationship between injury and employment ensures that act will not be "convert[ed] . . . into an [a]ct for health insurance, and [made] . . . a substitute for disability or old age pensions"); *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 118, 96 A. 368 (1916) ("the words 'arising out of and in the course of his employment' do not make the employer an insurer against all . . . risks . . . but include only those injuries arising from the risks of the business which are suffered while the employee is acting within the scope of his employment"). We agree with the defendant that, were we to follow our reasoning in *Savage* and to conclude that injuries sustained as a result of an idiopathic fall to a level floor are per se compensable if they occur in the course of employment, we would virtually be eliminating, for such cases, the arising out of prong of the test. Thus, even though the Appellate Court properly followed *Savage* in applying our reasoning therein to the facts of the present case, we nevertheless must reverse the judgment of the Appellate Court in light our disavowal of that reasoning.

In closing, we briefly address the question that we originally certified; see footnote 8 of this opinion; namely, whether an injury arises out of one's employment, and is therefore compensable, only if the condition or hazard of the employment that caused the injury is "peculiar" to that employment. As the Appellate Court

recognized in its opinion; see *Clements* v. *Aramark Corp.*, supra, 182 Conn. App. 236 n.6; this court, on occasion, has indicated as much, most recently in *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, supra, 274 Conn. 238. See id. ("conditions that arise out of employment are peculiar to [it], and not such exposures as the ordinary person is subjected to" (internal quotation marks omitted)); see also *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 310, 97 A. 320 (1916) (same). As the Appellate Court further observed, however; see *Clements* v. *Aramark Corp.*, supra, 236 n.6; this court also has stated repeatedly that an injury is compensable even though the condition to which the employee was exposed in the workplace posed no greater risk than that to which she might be exposed in the ordinary course outside of her employment. See, e.g., *Blakeslee* v. *Platt Bros. & Co.*, supra, 279 Conn. 246 (injury suffered by employee may be compensable even though work related condition that resulted in injury presented no greater risk of harm to employee than risk to which employee was subjected when not at work); *Triano* v. *United States Rubber Co.*, supra, 144 Conn. 397 (same); *Puffin* v. *General Electric Co.*, supra, 132 Conn. 281 (same).

It should be apparent from the reasoning employed in the present case what we mean when we say that the risk or condition must be "peculiar to the employment" for the injury to be compensable. Indeed, we accurately explained the meaning of the term long ago: "The hazard is peculiar to the employment because it is incidental to and grows out of the conditions of the employment and not because it should [have been] foreseen or expected, or because it involves [a] danger of serious bodily injury. We have never held that the conditions of the employment must be such as to expose the employee to extraordinary risks in order to entitle him to compensation in case of injury. *The risk may be no different in degree or kind* [*from*] *those to which he may be exposed outside of his employment.* The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment." (Emphasis added; internal quotation marks omitted.) *Puffin* v. *General Electric Co.*, supra, 132 Conn. 281–82. The foregoing statement is a fair exposition of the law as it generally has been characterized and applied in this state for many decades; see, e.g., *Blakeslee* v. *Platt Bros. & Co.*, supra, 279 Conn. 251 ("it is not a prerequisite to compensability that the risk of injury be greater to the employee than to a member of the public"); *Fiarenzo* v. *Richards & Co.*, 93 Conn. 581, 587, 107 A. 563 (1919) ("[t]he employment may be considered as causal in the sense that it is a necessary condition out of which, necessarily or incidentally due to the employment, arise the facts creating liability, and that is the extent to which the employment must be necessarily

connected in a causal sense with the injury"); *Fiarenzo* v. *Richards & Co.*, supra, 585 (explaining that employee would be entitled to compensation if he slipped and fell while walking at work); and it is consistent with the fact that the so-called "peculiar-risk test," insofar as that test requires "that the source of harm be in its nature . . . peculiar to the occupation" in the sense of being uncommon outside of the employment, is "now largely obsolete."[21] 1 L. Larson & T. Robinson, supra, c. 3, p. 3-1. It remains so today. Consequently, to the extent that we previously have suggested that an injury is not compensable under the act unless it was caused by a hazard unique or distinctive to the employment, we disavow any such suggestion.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment affirming the decision of the Compensation Review Board.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** June 24, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In the present context, the term "idiopathic fall" refers to a fall that is brought about by a purely personal medical condition, such as a seizure or a heart attack, and not by any condition or risk of employment.

[2] "Syncope" is defined as the "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow." Stedman's Medical Dictionary (28th Ed. 2006) p. 1887.

[3] In the interest of simplicity, we refer to Aramark Corporation as the defendant.

[4] See *Clements* v. *Aramark Corp.*, 330 Conn. 904, 192 A.3d 425 (2018). As we explain more fully hereinafter; see footnote 8 of this opinion; we must revise the question as originally certified to more accurately reflect the issue presented by this appeal.

[5] "In its brief [in the Appellate Court], the defendant concede[d] that '[t]he facts as stated by the [plaintiff] are undisputed with the exception of references made regarding the locus of the [plaintiff's] fall giving rise to the subject claim. The [plaintiff] has averred that her fall occurred on 'concrete' giving rise to the subject injury. No facts were found as to the actual nature of the surface [on] which the [plaintiff] fell. As such, no finding of fact in the record supports reference to the surface as concrete.' " *Clements* v. *Aramark Corp.*, supra, 182 Conn. App. 226 n.1. As we discuss in greater detail subsequently in this opinion, although the decision of the board refers to that surface as concrete, it was the plaintiff's position in the Appellate Court "that it did not make a difference to her claim whether the ground was concrete or some other material." Id. The plaintiff also makes no claim that the nature of the surface on which she fell has any bearing on the proper analysis and outcome of the present appeal.

[6] "Ecchymosis" is defined as "[a] purplish patch caused by extravasation of blood into the skin . . . ." Stedman's Medical Dictionary (28th Ed. 2006) p. 606.

[7] "Asystole" is defined as the "[a]bsence of contractions of the heart." Stedman's Medical Dictionary (28th Ed. 2006) p. 172.

[8] Our grant of certification was limited to the following issue: "Did the Appellate Court properly determine that the condition causing the plaintiff's injury did not need to be peculiar to her employment; *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, [supra, 274 Conn. 238], quoting *Larke* v. *John Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 310, 97 A. 320 (1916); in order for her injury to arise out of her employment for purposes of workers' compensation benefits?" (Internal quotation marks omitted.) *Clements* v. *Aramark Corp.*, supra, 330 Conn. 904. As we explain more fully hereinafter, it is apparent that, as the Appellate Court concluded, the plaintiff was not required to establish that the condition of her employment that caused her injury was different in kind or degree from that to which she otherwise

may have been exposed outside of her employment. Our determination in that regard, however, does not resolve the more fundamental issue posed by the present case, that is, whether, in light of the idiopathic nature of the plaintiff's fall, a causal relationship existed between her injury and her employment sufficient to bring the plaintiff's claim within the purview of the act. Consequently, we must reformulate the certified question in this manner to conform to the issue actually presented to and decided by the Appellate Court. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191, 884 A.2d 981 (2005) (this court may reframe certified question to more accurately reflect issue presented).

[9] We note, however, that the legislature has barred recovery under the act by an employee whose injuries were caused by that employee's own intoxication or "wilful and serious misconduct . . . ." General Statutes § 31-284 (a).

[10] "A rebuttable presumption is equivalent to prima facie proof of a fact and can be rebutted only by the opposing party's production of sufficient and persuasive contradictory evidence that disproves the fact that is the subject of the presumption. . . . A presumption requires that a particular fact be deemed true until such time as the proponent of the invalidity of the fact has, by the particular quantum of proof required by the case, shown by sufficient contradictory evidence, that the presumption has been rebutted." (Internal quotation marks omitted.) *Fish* v. *Fish*, 285 Conn. 24, 46 n.21, 939 A.2d 1040 (2008).

[11] As we discuss in greater detail subsequently in this opinion, an idiopathic fall like the fall at issue in *Reeves* is compensable if the conditions of employment expose the employee to an increased danger from the fall. Because *Reeves* involved a fall through an open, second floor doorway—a circumstance that obviously increased the likelihood of serious injury—the injuries resulting from that fall ordinarily would be compensable. See *Reeves* v. *John A. Dady Corp.*, supra, 95 Conn. 631. In that case, however, we concluded that the employee's widow was not entitled to compensation because the evidence established that the employee had no legitimate work related reason to be standing in the second floor doorway when he fainted and fell. See id., 629, 632. For present purposes, we need not express a view as to the merits of that determination; rather, we cite *Reeves* merely as an example of the applicability of the rebuttable presumption that we recognized in *Saunders*.

[12] In support of our conclusion in *Savage*, we observed that, "[o]ur decisions make it clear that we have adopted a broader conception of employment, and the nature of the risks arising out of it, than is the case in some other jurisdictions, and an adherence to the spirit of those decisions requires a conclusion that the commissioner did not err in holding that [Savage's] injuries arose out of and in the course of his employment." *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 350.

[13] In his dissenting opinion in *Savage*—which was a three to two decision—Justice Hinman, who was joined by Justice Brown, emphasized this very point, explaining that, in *Gonier*, the risk of injury posed by Gonier's employment was "the danger of falling from the scaffolding [on] which [his] employment brought him," and, further, that "the decision [in *Gonier*] would [not] have been the same had he been simply standing on the floor, as in [*Savage*]." *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 351 (*Hinman, J.*, dissenting). We think that Professor Larson's observation concerning Justice Hinman's dissent bears mention: "The court [in *Savage*] divided three to two, with a strong dissent expressing the view that such a doctrine destroys the [arising out of] test in this area." 1 L. Larson & T. Robinson, supra, § 9.01D [4] [a], p. D9-27.

[14] Our decision in *Hartz* identifies the injured employee by his last name only.

[15] We note that, in *Savage*, we also cited *Richardson* v. *New Haven*, supra, 114 Conn. 392, along with *Hartz*, to support our assertion that an injury resulting from an idiopathic cause that occurs in the course of the employment is deemed to arise out of the employment, no less than an injury brought about by any other cause, even though the conditions of the employment did not increase the risk of injury. See *Savage* v. *St. Aeden's Church*, supra, 122 Conn. 347. *Richardson*, however, stands for no such proposition. Rather, like *Hartz*, *Richardson* merely holds that an employee with a preexisting condition that makes him more prone to injury, or more susceptible to serious injury, is no less entitled to compensation for an injury that occurred in the course of the employment and arose out of it than is an employee without such a preexisting condition. See *Richardson* v. *New Haven*,

supra, 391–92.

[16] It also appears that the board itself has never followed the reasoning that we employed in *Savage*, electing instead to attempt to distinguish *Savage* on the law or the facts. See, e.g., *Kielbowicz* v. *Tilcon Connecticut, Inc.*, No. 5855, CRB 6-13-6 (June 12, 2014) (distinguishing *Savage* on its facts and rejecting employee's contention under *Savage* "that basically any fall at a Connecticut worksite [that] may be described as idiopathic [is] compensable").

[17] Similarly, we did not employ *Savage*'s faulty reasoning in *Stankewicz* v. *Stanley Works*, 139 Conn. 215, 92 A.2d 736 (1952), a case decided fifteen years after *Savage* and involving nearly identical facts. In that case, Michael Stankewicz was found dead in the turbine room of his employer's plant, where his primary responsibility was to monitor the boilers. Id., 215–16. When his body was discovered, his left foot was resting on a step leading into the room "and his right foot was turned under his left leg. There was evidence of injury in the right temporal region of his head caused by striking the concrete floor. The commissioner concluded that Stankewicz had slipped [on] or stumbled over the step while entering the turbine room from the [adjacent] locker room and had fallen, striking his head and sustaining an injury [that] caused his death." Id., 216. The commissioner therefore determined that the plaintiff, Stankewicz' widow, was entitled to compensation, and the trial court upheld the decision of the commissioner. Id., 215. On appeal, the employer argued that the commissioner's conclusion regarding the manner of death was speculative, that there was evidence that "Stankewicz died of a heart attack, [which] . . . caused his fall and the resulting evidence of head injury, and that his death [therefore] did not arise out of his employment so as to be compensable under the act." Id., 216. We rejected this claim, not because it was immaterial whether Stankewicz' fall and resultant injuries were accidental or the result of a heart attack— as we had reasoned in *Savage*—but because "[t]he place where [Stankewicz] was found, the position in which his body and limbs were lying, his custom of going from the locker room to the turbine room after he had eaten his lunch, and his duty of watching the pressure gauges on the boilers reasonably support[ed] the inference, as a question of fact, that he slipped or stumbled over the step and fell, striking his head and sustaining a head injury." Id., 217. Our analysis in *Stankewicz* accords with our statement in *Reeves* that "[a]n injury [that] occurs in the course of the employment will ordinarily arise out of the employment; *but not necessarily so* . . . ." (Emphasis added; internal quotation marks omitted.) *Reeves* v. *John A. Dady Corp.*, supra, 95 Conn. 632. An injury that occurs in the course of employment but that is set in motion by a personal infirmity unrelated to the employment does *not* arise out of the employment unless there is evidence that the employment contributed to the injury in some meaningful way. In the absence of such evidence, the injury occurs simultaneously with the employment but does not arise out of it. See, e.g., *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 117–18, 527 A.2d 664 (1987) ("[T]here [must be] a direct causal connection between the injury . . . and the employment. The question [the trier of fact] must answer is, was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment? If it was the latter there can be no award made. . . . [Thus] [i]t is not sufficient that the conditions of the employment contributed to some undefined degree to bring on the disability from which the employee suffers. In the production of results many circumstances often play a part of so minor a character that the law cannot recognize them as causes." (Citation omitted; internal quotation marks omitted.)).

[18] In fact, as the defendant points out, the decision of the commissioner indicates only that, according to the plaintiff, she became dizzy, fainted and fell to the ground. The plaintiff, however, had claimed that she had fallen on "hard cement," and, consistent with that contention, the decision of the board states that the plaintiff "sustained her injury while walking on a cement surface . . . ." We may assume, for purposes of this appeal, that the ground on which the plaintiff fell was paved with cement.

[19] "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of [decision-making] consistency in our legal culture and . . . is an obvious manifesta-

tion of the notion that [decision-making] consistency itself has normative value." (Internal quotation marks omitted.) *Spiotti* v. *Wolcott*, 326 Conn. 190, 201, 163 A.3d 46 (2017).

[20] Because the question presented requires us to construe the act, the principle of legislative acquiescence is implicated. "[I]n evaluating the force of stare decisis, our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. . . . When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 417–18, 195 A.3d 664 (2018).

[21] We also agree with the following explication of the issue: "The right to compensation benefits depends on one simple test: Was there a [work connected] injury? Negligence, and, for the most part, fault, are not in issue and cannot affect the result. Let the employer's conduct be flawless in its perfection, and let the employee's [conduct] be abysmal in its clumsiness, rashness and ineptitude; if the accident arises out of and in the course of the employment, the employee receives an award. Reverse the positions, with a careless and stupid employer and a wholly innocent employee and the same award issues.

"Thus, the test is not the relation of an individual's personal quality (fault) to an event, but the relationship of an event to an employment. The essence of applying the test is not a matter of assessing blame, but of marking out boundaries." 1 L. Larson & T. Robinson, supra, § 1.03 [1], p. 1-5; see also, e.g., *Nicholson* v. *South Carolina Dept. of Social Services*, 411 S.C. 381, 390, 769 S.E.2d 1 (2015) ("Quite simply, [the employee] was at work on the way to a meeting when she tripped and fell. The circumstances of her employment required her to walk down the hallway to perform her responsibilities and in the course of those duties she sustained an injury. . . . [T]hese [undisputed] facts establish a causal connection between her employment and her injuries—the law requires nothing more. Because [the employee's] fall happened at work and was not caused by [an idiopathic] condition peculiar to her, it was causally connected to her employment. Therefore, her injuries arose out of her employment as a matter of law and she is entitled to workers' compensation.").